AGUA CALIENTE BAND OF CAHUILLA INDIANS, a federally-recognized Indian Tribe; Agua Caliente Tribal Corporation, a federally-chartered Tribal governmental corporation, Plaintiffs–Appellants,

v.

Galen HARDIN, in his official capacity as Tax Compliance Specialist of California State Board of Equalization; Johan Klehs, in his official capacity as member of the California State Board of Equalization; Dean Andal, in his official capacity as member of the California State Board of Equalization; Ernest J. Dronenburg, Jr., in his official capacity as member of the California State Board of Equaliza-

tion; John Chiang, in his official capacity as member of the California State Board of Equalization, Defendants–Appellees.

No. 99–55251.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 7, 2000

Filed Sept. 11, 2000

court, are sufficient to determine the basis for the trial court's decision. *See id.*

Art Bunce, Law Offices of Art Bunce, Escondido, California, for the appellants.

Herbert Levin, Office of the Attorney General of the State of California, Los Angeles, California, for the appellees.

Before: TROTT, FERNANDEZ, and McKEOWN, Circuit Judges.

McKEOWN, Circuit Judge:

The Agua Caliente Band of Cahuilla Indians and the Agua Caliente Tribal Corporation (collectively "the Tribe") seek a declaratory judgment that federal law precludes imposition of the State of California's sales and use tax on purchases of food and beverages by non-tribal members at a tribal resort on reservation land. The district court determined that the Eleventh Amendment barred the Tribe's claims and dismissed the action for lack of jurisdiction. Citing the Supreme Court's recent treatment of the *Ex Parte Young* doctrine in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), the court reasoned that state taxation involved a "core area of state sovereignty," and found that the *Young* exception to sovereign immunity did not apply. The court also found that the *Young* exception was inapplicable because the Tribe had an adequate remedy at law: it could pay the disputed tax and then sue in state court for a refund. We conclude that the Tribe's claims fall within the *Ex Parte Young* exception to the Eleventh Amendment bar, that *Coeur d'Alene* does not alter the scope of the *Young* exception in this case, and that the district court therefore erred in concluding that it lacked jurisdiction. Accordingly, we reverse and remand.

## BACKGROUND

The Agua Caliente Band of Cahuilla Indians is a federally recognized Indian tribe. In 1959, the Tribe [1] leased certain reservation property to a non-tribal party, which then constructed a hotel on the property. Many years later, in 1992, the Tribe purchased a leasehold interest in the hotel. Pending the issuance of a federal

1. To explain the relationship between the Agua Caliente Band of Cahuilla Indians and the Agua Caliente Tribal Corporation, in this paragraph "Tribe" refers only to the Agua Caliente Band of Cahuilla Indians, not to the Corporation. Elsewhere in the opinion, for ease of reference, we refer to both collectively as "the Tribe."

charter for a tribal corporation pursuant to the Indian Reorganization Act of June 18, 1934, 25 U.S.C. § 477, the Tribe transferred that interest to a tribal-owned holding company. In 1994 a charter was granted, the Agua Caliente Tribal Corporation was formed, and the Tribe assumed ownership of 100% of the Corporation's stock. The Tribe then transferred the leasehold interest in the hotel from the holding company to the Corporation, which has operated the hotel since that time.

The hotel is located on land near Palm Springs, California, that has been part of a reservation since 1876, and that is currently held in trust by the United States for the benefit of the Tribe. Known variously as the Spa Hotel Resort, the Spa Hotel Resort & Mineral Springs, and the Spa Hotel and Casino, the hotel features 230 rooms, a natural mineral springs spa, several restaurants and bars, a casino, and various other guest amenities. Patrons of the hotel—primarily non-tribal members—purchase food and beverages for consumption on the hotel property. During the time period relevant to this appeal, the Tribe did not collect California's sales or use tax from non-tribal consumers of food and beverages.

In 1998, the California State Board of Equalization assessed the Tribe a use tax collection and remittance liability totaling approximately $354,040, excluding interest and penalties, for the period from 1992 to 1997. This sum corresponded to the amount of unpaid use tax attributable to the Tribe's sale of food and beverages to non-tribal members. The Board informed the Tribe that if it failed to pay the tax within one month, the Department of Alcoholic Beverage Control would suspend its alcoholic beverage license.

Although the Tribe did not dispute the amount of the assessed tax, it did dispute its obligation to pay the tax and immedi-

ately filed the underlying action seeking declaratory and injunctive [2] relief against the California Board of Equalization, the Department of Alcoholic Beverage Control, and the Director of the Department of Alcoholic Beverage Control. The Tribe claimed that food and beverages sold to non-members are items of "reservation-based value" because the Tribe adds value in preparation, service, facilities, management and the like. In opposition to the Tribe's request for a temporary restraining order and preliminary injunction, the defendants raised an Eleventh Amendment immunity defense. Following the district court's grant of a preliminary injunction, the Tribe amended its complaint to add as defendants the individual members of the Board of Equalization and to allege a theory of relief under the *Ex parte Young* doctrine. The Department of Alcoholic Beverage Control and its Director agreed not to suspend the Tribe's liquor license pending the outcome of the litigation and were thereafter dismissed from the case,[3] leaving as defendants several individual members of the Board, sued in their official capacities ("the Board").

At the conclusion of a one-day bench trial on the merits of the Tribe's claims, the district court concluded that it lacked jurisdiction because of the Eleventh Amendment and did not reach the merits of the Tribe's allegations. In its findings of fact and conclusions of law, the court reasoned that the *Young* exception to Eleventh Amendment sovereign immunity does not apply to claims implicating core areas of state sovereignty, including state taxation. Thus, the court held that the Eleventh Amendment barred the Tribe's claims and divested the court of jurisdiction. As an alternative basis for holding that it lacked jurisdiction, the court reasoned that the *Young* exception does not

---

2. The Tribe's claim for injunctive relief sought an injunction prohibiting the Department of Alcoholic Beverage Control and its director from suspending the Tribe's liquor license for its failure to pay the assessed taxes. Because they are no longer parties to this case, as

explained below, the only claim at issue now is the Tribe's claim for declaratory relief.

3. The California State Board of Equalization was also dismissed.

apply if there is an adequate remedy at law, and the Tribe had such a remedy because it could pay the tax and then sue for a refund in state court on the basis of its federal claims. The Tribe timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

## ANALYSIS

### I. Eleventh Amendment

 The Eleventh Amendment grants to states a sovereign immunity from suit[4] that, when invoked, bars adjudication of a dispute in federal court. Although the Amendment itself suggests that the bar is jurisdictional in nature, the Supreme Court recently noted that such an interpretation "has been neither our tradition nor the accepted construction of the Amendment's text." *Coeur d'Alene*, 521 U.S. at 267, 117 S.Ct. 2028. Instead, the Amendment "enacts a sovereign immunity from suit, rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction." *Id.* Though not jurisdictional in the traditional sense, whether the Tribe's claims are barred by the Eleventh Amendment presents threshold issues for our review.

 Since the Supreme Court's decision in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), courts have recognized an exception to the Eleventh Amendment bar for suits for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law. The *Young* doctrine is premised on the fiction that such a suit is not an action against a "State" and is therefore not subject to the sovereign immunity bar. The *Young* doctrine strikes a delicate balance by ensuring on the one hand that states enjoy the sovereign immunity preserved for them by the Eleventh Amendment while, on the other hand, "giving recognition to the need to prevent violations of federal law." *Coeur d'Alene*, 521 U.S. at 269, 117 S.Ct. 2028. And, while the Supreme Court has recently revisited the scope of both the Eleventh Amendment and the *Young* exception in *Coeur d'Alene* and in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Court has made clear that it does not "question the continuing validity of the *Ex parte Young* doctrine." *Coeur d'Alene*, 521 U.S. at 269, 117 S.Ct. 2028; *see also Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir.1997) ("The viability of *Ex parte Young* as traditionally applied survives the Supreme Court's treatment of the issue in *Idaho v. Coeur d'Alene* [.]"). Our task here is to determine whether the Tribe's claims fall within the scope of the doctrine.

 The Tribe has sued various state officials in their official capacities for declaratory relief, specifically seeking a declaratory judgment that application of California's sales and use tax to food and beverage purchases made by non-Indians at the Spa Hotel violates federal law which prohibits state taxation of value-generating activities on reservation land. *See California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987); *Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980); *Moe v. Confederated Salish & Kootenai Tribes of the Flathead Reservation*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976). Based upon traditional *Young* ju-

---

**4.** The Supreme Court has construed the amendment to bar not only suits by citizens of another state or citizens of a foreign state, but also suits by a state's own citizens, *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), by another sovereign, *Principality of Monaco v. Mississippi*, 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282 (1934), or by an Indian Tribe, *Blatchford v. Native Village of* *Noatak*, 501 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991). However, suits by the United States against a State are not subject to the Eleventh Amendment bar, *United States v. Texas*, 143 U.S. 621, 12 S.Ct. 488, 36 L.Ed. 285 (1892), nor are suits by one State against another State, *South Dakota v. North Carolina*, 192 U.S. 286, 24 S.Ct. 269, 48 L.Ed. 448 (1904).

risprudence, the Tribe's claims appear to fall squarely within the exception. The Board argues, however, that *Coeur d'Alene* narrowed the *Young* doctrine to preclude its application to claims implicating core areas of state sovereignty and that because the Tribe's requested relief, if granted, would directly threaten California's sovereign authority to tax, the Tribe's claims are barred by the Eleventh Amendment.[5] But for the Supreme Court's decision in *Coeur d'Alene*, resolution of the *Young* issue would be straightforward: as traditionally understood, *"Young ... held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). We therefore consider whether *Coeur d'Alene* narrowed the *Young* exception in the way, and to the extent, urged by the Board.

At issue in *Coeur d'Alene* was the tribe's claims to submerged lands located within the boundaries of the Coeur d'Alene Reservation. As here, the tribe named as defendants the State of Idaho, various state agencies, and various state officials in their official capacity. The tribe sought, in addition to its land title claims, declaratory and injunctive relief establishing its exclusive right to the use and enjoyment of the submerged lands and prohibiting the defendants from regulating the lands. The defendants claimed immunity from suit under the Eleventh Amendment. A majority of the Court concluded that the *Young* exception did not apply because of the unique nature of the tribe's claims, which

the Court determined were the "functional equivalent" of a quiet title action that would have divested the state of substantially all regulatory power over the land at issue. *Coeur d'Alene*, 521 U.S. at 282, 117 S.Ct. 2028; *see also id.* at 289, 296, 117 S.Ct. 2028 (O'Connor, J., concurring in part). The challenge posed by *Coeur d'Alene* is to figure out whether the Tribe's claims here are of the same character as those in *Coeur d'Alene*.

The *Coeur d'Alene* decision reflects divergent views among the Justices as to the nature and scope of the *Young* doctrine. In the principal opinion, Justice Kennedy, joined only by Justice Rehnquist, emphasized that a "careful balancing" is required "when determining whether the *Young* exception applies in a given case," *id.* at 278, 117 S.Ct. 2028, and that a "case-by-case approach to the *Young* doctrine has been evident from the start." *Id.* at 280, 117 S.Ct. 2028. Focusing on the "special sovereignty interests" at issue in the case, Justice Kennedy noted the relevance of such factors as the particular federal right a lawsuit implicates, and whether " 'special factors counsel[l] hesitation' " in the exercise of jurisdiction. *Id.* at 280, 282, 117 S.Ct. 2028 (quoting *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 396, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)); *see also id.* at 274–75, 278–80, 117 S.Ct. 2028. Rejecting the balancing inquiry and disagreeing with this characterization of *Young*, Justice O'Connor, joined by Justices Scalia and Thomas, stated in a partial concurrence that "[t]his approach unnecessarily recharacterizes and narrows much of our *Young* jurisprudence." *Id.* at

---

**5.** The Tax Injunction Act, which generally bars federal courts from providing declaratory or injunctive relief to parties challenging state tax provisions where a "plain, speedy and efficient remedy may be had in the courts of such State[,]" does not bar this action. 28 U.S.C. § 1341. In *Moe*, 425 U.S. at 472–74, 96 S.Ct. 1634, the Supreme Court held that § 1341's jurisdictional bar does not apply to Indian tribes bringing suit under 28 U.S.C. § 1362, which provides that district courts "shall have original jurisdiction of all civil actions, brought by any Indian tribe or band

... wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." Section 1362 does not, however, waive state sovereign immunity. *See Blatchford*, 501 U.S. at 786, 111 S.Ct. 2578 (holding that § 1362 does not reflect Congress's "unmistakably clear" intent to abrogate immunity). *Cf. Sac & Fox Nation of Missouri v. Pierce*, 213 F.3d 566, 571 (10th Cir.2000) (acknowledging the Court's holding that § 1362 does not operate as a general waiver of state sovereign immunity).

291, 117 S.Ct. 2028. In Justice O'Connor's view, "the principal opinion replaces a straightforward inquiry into whether a complaint alleges an ongoing violation of federal law and seeks [prospective] relief ... with a vague balancing test that purports to account for a 'broad' range of unspecified factors." *Id.* at 296, 117 S.Ct. 2028. Justice O'Connor concluded that under the Court's precedents, "a *Young* suit is available where a plaintiff alleges an ongoing violation of federal law, and where the relief sought is prospective rather than retrospective." *Id.* at 294, 117 S.Ct. 2028 (emphasis omitted). The dissenting Justices, while disagreeing with the result, noted that Justice O'Connor's partial concurrence "reject[ed] the lead opinion's call for ... case-by-case balancing," and commented that "there is reason for great satisfaction that Justice O'Connor's view is the controlling one ..." *Id.* at 297–98, 117 S.Ct. 2028 (Souter, J., dissenting).[6]

Although the five members of the majority may have disagreed on the specifics of the *Young* analysis, they agreed that the Eleventh Amendment barred the tribe's suit. Central to the Court's decision was the degree to which the tribe's requested relief would have invaded Idaho's unique interest in the submerged lands, *see id.* at 282–84, 117 S.Ct. 2028; *see also id.* at 291, 296, 117 S.Ct. 2028 (O'Connor, J., concurring in part), which led the Court to "examine the effect of the Tribe's suit and its impact on [the state's] special sovereignty interests." *Id.* at 281, 117 S.Ct. 2028. To that end, the Court stated that "[t]he suit would diminish, even extinguish, the State's control over a vast reach of lands and waters long deemed by the State to be an integral part of its territory," *id.* at 282, 117 S.Ct. 2028, stripping the state of a broad range of powers associated with its control of that land:

[T]he declaratory and injunctive relief the Tribe seeks is close to the functional equivalent of quiet title in that *substantially all benefits of ownership and control would shift from the State to the Tribe.* This is especially troubling when coupled with the far-reaching and invasive relief the Tribe seeks, relief with consequences going well beyond the typical stakes in a real property quiet title action. The suit seeks, in effect, a determination that the lands in question are *not even within the regulatory jurisdiction of the State.* The requested injunctive relief would *bar the State's principal officers from exercising their governmental powers and authority over the disputed lands and waters.*

*Id.* (emphasis added). The unique nature of the tribe's claims and the relief it requested led the Court ultimately to conclude that the tribe's suit was in essence a suit against the State itself: "[t]o pass this off as a judgment causing little or no offense to Idaho's sovereign authority and its standing in the Union would be to ignore the realities of the relief the Tribe demands." *Id.* Justice O'Connor emphasized this reasoning in her partial concurrence: "Where a plaintiff seeks to divest the State of all regulatory power over submerged lands ... it simply cannot be said that the suit is not a suit against the State." *Id.* at 296. Finally, writing for the majority, Justice Kennedy further noted that the requested relief would affect the State's sovereign interests "in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury," *id.* at 287, 117 S.Ct. 2028, relief that has never been available under the *Young* doctrine. The Court therefore held that the Eleventh Amendment barred the tribe's claims.

6. *Cf. Earles v. State Bd. of Certified Pub. Accountants of Louisiana,* 139 F.3d 1033, 1039 (5th Cir.1998) ("We concur with the consensus among other courts that although the principal opinion in *Coeur d'Alene* suggests a case-by-case (rather than rule-based) approach to the application of *Ex parte Young,* this part of the opinion did not muster a majority ....") (citation omitted). *Accord Mille Lacs Band of Chippewa Indians v. Minnesota,* 124 F.3d 904, 913–14 (8th Cir. 1997).

It is against this backdrop that we are asked by the Board to hold that California's sovereign interest in taxation is akin to Idaho's sovereign interest in its submerged lands, likewise rendering the *Young* fiction inapplicable here. Because we do not read *Coeur d'Alene* this broadly, we decline to do so.

We start with the principle that the *Young* doctrine is alive and well and that *Coeur d'Alene* addressed a unique, narrow exception not present here. We do not read *Coeur d'Alene* to bar all claims that affect state powers, or even important state sovereignty interests.[7] If, as in *Coeur d'Alene*, the requested relief would infringe upon a state's sovereignty to such a degree as to render the suit against the state itself, then it is barred by the Eleventh Amendment. *Id.* at 296, 117 S.Ct. 2028 ("it simply cannot be said that the suit is not a suit against the state"). This is in line with our traditional conception of the *Young* exception, which has always distinguished between a suit against a State *qua* State and a suit against a state official to enjoin the enforcement of a state act that violates federal law: the *Young* doctrine has always permitted the latter to avoid the sovereign immunity bar.

In *Coeur d'Alene*, it was the unique divestiture of the state's broad range of controls over its own lands that made the *Young* exception to sovereign immunity inapplicable. Thus, in the case on appeal here, characterizing the state's interest in taxation as a core sovereignty area does not address the question posed by *Coeur d'Alene*. Indeed, the question posed by *Coeur d'Alene* is not whether a suit implicates a core area of sovereignty, but rather whether the relief requested would be so much of a *divestiture* of the state's sovereignty as to render the suit as one *against the state itself*. To interpret *Coeur d'Al-*

*ene* differently would be to open a Pandora's Box as to the relative importance of various state powers or areas of state regulatory authority. The majority did not countenance such a result.

Applying this understanding of *Coeur d'Alene* to our case, it is clear that state taxation of tribes presents a very different circumstance from the situation in *Coeur d'Alene*. While we recognize that the power to impose a sales and use tax involves an important aspect of state sovereignty, we cannot overlook the fact that the claims here are brought by an Indian tribe. Indeed, in the context of state taxation of *tribes*, there are preemption considerations and *competing* sovereignty interests, the merits of which are governed by a long line of cases. *See, e.g., Cabazon Band*, 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244; *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980); *Confederated Tribes*, 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10; and *Moe*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96. As we stated in *Crow Tribe of Indians v. Montana*, 819 F.2d 895 (9th Cir.1987):

> In *Cabazon*, the Supreme Court stated that "the federal tradition of Indian immunity from state taxation is very strong and ... the state interest in taxation is correspondingly weak. Accordingly, it is unnecessary to rebalance these interests in every case."

*Id.* at 901 (citation omitted). The determination of whether the *Young* exception applies does not call for a balancing of one sovereign interest vis-a-vis another sovereign interest. Nonetheless, to assess the significance of the potential interference with California's sovereignty in this case, it is important to distinguish between the sovereign divestiture claim in *Coeur d'Alene* and the dispute here among sovereigns

---

7. *But see ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1190, 1193–94 (10th Cir.1998) (applying *Coeur d'Alene* and holding that the Eleventh Amendment barred a corporation's challenge to state personal property taxes because "a state's interests in the integrity of its property tax system lie at the core of the state's sovereignty" and that the relief requested would be "'fully as intrusive' into the state's sovereignty as would be a retroactive money judgment.").

as to the reach of the taxing authority. Accordingly, although we express no view on the merits, we conclude that the Tribe's requested relief would not affect California's sovereignty interests to such "a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury," *Coeur d'Alene,* 521 U.S. at 287, 117 S.Ct. 2028, but would only ensure that the state sales and use tax be applied by state officials in a manner consistent with federal law. Any effect the Tribe's requested relief would have on the state's tax collection activities does not rise to the level of the interference with state sovereignty that existed in *Coeur d'Alene.*

We also note that the decision in *Coeur d'Alene* rested in large part on the characterization of the claim as the "functional equivalent" of a quiet title action, a suit that could not be brought in federal court. *See id.* at 282, 117 S.Ct. 2028; *see also id.* at 289, 117 S.Ct. 2028 (O'Connor, J., concurring in part). In contrast, there is a long tradition of federal courts exercising jurisdiction over tribal challenges to state taxation. For example, in *Moe,* the Court upheld a tribe's right to maintain suit on its own behalf to enjoin collection of state cigarette sales tax. *Moe,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96. *See also Gila River Indian Community v. Waddell,* 91 F.3d 1232 (9th Cir.1996); *Crow Tribe of Indians v. Montana,* 650 F.2d 1104 (9th Cir.1981); *Agua Caliente Band of Mission Indians v. County of Riverside,* 442 F.2d 1184 (9th Cir.1971). In fact, tribal challenges to state taxation under 28 U.S.C. § 1362 are unique because most challenges to state tax provisions are barred from federal review under the Tax Injunction Act, a bar separate and distinct from that posed by the Eleventh Amendment. *See* 28 U.S.C. § 1341 (federal courts lack jurisdiction to consider challenges to state tax-

es if a "plain, speedy and efficient remedy may be had in the courts of such State").[8]

In the final analysis, we conclude that the Tribe's suit is properly characterized as a suit for declaratory relief against state officers and not against the state itself, and that *Coeur d'Alene,* while instructive, is inapposite.

## II. Adequate Remedy At Law

 As to the district court's alternative basis for dismissing the case—that the *Young* exception was inapplicable because there existed an adequate remedy at law in state court—we conclude the dismissal was error. That there existed an alternate forum in state court in which the Tribe *could* raise its claims neither divested the district court of jurisdiction nor removed the case from the *Young* exception for Eleventh Amendment purposes. The Supreme Court's decision in *Coeur d'Alene,* although divided, supports this conclusion. Justice Kennedy stated in the principal opinion that "[w]here there is no available state forum the *Young* rule has special significance," *id.* at 271, 117 S.Ct. 2028, and concluded that one instance in which *Young* applies is if there is "no state forum available to vindicate federal interests," *id.* at 270, 117 S.Ct. 2028. He ultimately acknowledged, however, that "[e]ven if there is a prompt and effective remedy in a state forum, a second instance in which *Young* may serve an important interest is when the case calls for the interpretation of federal law." *Id.* at 274, 117 S.Ct. 2028. Moreover, three other Justices indicated that the availability of a state forum is not a bar to the *Young* doctrine, stating that "[n]ot only do our early *Young* cases fail to rely on the absence of a state forum as a basis for jurisdiction, but *we also permitted federal ac-*

8. *See also Sac & Fox Nation of Missouri v. Pierce,* 213 F.3d 566, 572–73 & n. 3 (10th Cir.2000) (upholding jurisdiction under § 1362 and concluding that the Eleventh Amendment did not bar a tribe's suit to enjoin enforcement of a state motor fuel tax). Although we agree with the result in *Sac & Fox,* we believe that the question of whether the Eleventh Amendment bars a tribe's state tax challenge brought under § 1362 cannot be answered without considering *Coeur d'Alene* and the new twist it puts on Eleventh Amendment analysis, nor do we believe that *Moe* addressed the Eleventh Amendment issue.

tions to proceed even though a state forum was open to hear the plaintiff's claims." *Id.* at 292, 117 S.Ct. 2028 (O'Connor, J., concurring in part) (emphasis added), and characterized the principal opinion as "ultimately conced[ing]" that "in more recent cases *Young* has been applied '[e]ven if there is a prompt and effective remedy in a state forum.'" *Id.* at 293, 117 S.Ct. 2028 (quoting the principal opinion at 274). In light of these views, and given our previous holding that "[t]he viability of *Ex parte Young* as *traditionally* applied survives the Supreme Court's treatment of the issue in *Idaho v. Coeur d'Alene Tribe,*" *Doe v. Lawrence Livermore,* 131 F.3d at 839 (emphasis added), we conclude that the existence of a remedy at law in state court is not a bar to the *Young* exception.[9] And while we agree that in evaluating a claim for injunctive or declaratory relief courts must necessarily consider the adequacy of any remedy at law before awarding equitable relief,[10] under these circumstances this determination should be made in connection with an analysis of the merits.[11]

## CONCLUSION

In sum, we hold that the Tribe's claims fall within the *Young* exception; the Eleventh Amendment neither barred this action nor divested the district court of jurisdiction. We REVERSE the district court's dismissal for lack of jurisdiction and REMAND for consideration of the merits.

---

9. *Accord ANR,* 150 F.3d at 1192 ("[I]t appears to be clear ... in *Coeur d'Alene Tribe* that an *Ex Parte Young* injunction still may issue even when the state courts would provide an adequate forum for the plaintiff's constitutional claims.").

10. *See Coeur d'Alene,* 521 U.S. at 292, 117 S.Ct. 2028 ("[T]he inadequacy of a legal remedy is a prerequisite for equitable relief in any case.") (O'Connor, J., concurring in part).

11. Indeed, the adequacy of a remedy at law bears on whether a court *ought* to act, not whether a court has the *power* to act. "The exclusive equitable jurisdiction, or the *power* of courts to adjudicate upon the subject–matters coming within that jurisdiction, exists independently of the adequacy or inadequacy of the legal remedies obtainable under the circumstances of any particular case." 1 POMEROY, A TREATISE ON EQUITY JURISPRUDENCE § 218, at 368 (1994) (emphasis omitted and added).