UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CSX Transportation,
Incorporated,
                    *Plaintiff-Appellee,*

            and

United States of America,
                    *Intervenor,*

            v.

The Board of Public Works of the
State of West Virginia; Bob Wise,
Governor; Joe Manchin, III,
Secretary of State; John D. Perdue,
State Treasurer; Glen B. Gainer,
III, State Auditor; Darrell V.
McGraw, Jr., Attorney General;
Gus Douglass, Commissioner of
Agriculture; David Stewart, State
Superintendent of Schools,
                    *Defendants-Appellants.*

No. 01-2492

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Joseph Robert Goodwin, District Judge.
(CA-01-299-1)

Argued: May 7, 2002

Decided: July 12, 2002

Before WIDENER and MICHAEL, Circuit Judges, and
C. Arlen BEAM, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Katherine A. Schultz, Senior Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL, Charleston, West Virginia, for Appellants. James W. McBride, BAKER, DONELSON, BEARMAN & CALDWELL, Washington, D.C., for Appellee. Stephanie Robin Marcus, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor. **ON BRIEF:** Scott E. Johnson, Senior Assistant Attorney General, Steven E. Dragisich, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Charleston, West Virginia, for Appellants. Anne M. Stolee, BAKER, DONELSON, BEARMAN & CALDWELL, Washington, D.C., for Appellee. Robert D. McCallum, Jr., Assistant Attorney General, Karl K. Warner, II, United States Attorney, Mark B. Stern, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

CSX Transportation, Inc. (CSX) brought this lawsuit against the Board of Public Works of the State of West Virginia (the Board) and its officers, claiming that the Board's ad valorem tax assessment of its rail transportation property violates section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 (the 4-R Act), now codified at 49 U.S.C. § 11501. The Board moved to dismiss, arguing that the lawsuit is barred by West Virginia's Eleventh Amendment

immunity. The district court denied the motion, and the Board filed this interlocutory appeal. We affirm.

## I.

Section 306 of the 4-R Act was enacted to protect railroads from discriminatory state taxation.[1] The statute prohibits "a State, subdivision of a State, or authority acting for a State or subdivision of a State" from assessing rail transportation property at a higher percentage of the property's true market value than the percentage applied to other commercial and industrial property. 49 U.S.C. § 11501(b)(1). The statute also prohibits states, subdivisions, and authorities from levying or collecting taxes based on discriminatory assessments of rail transportation property. *Id.* § 11501(b)(2).[2] Federal district courts have jurisdiction to prevent state violations of these duties if "the ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction." *Id.* § 11501(c).

---

[1]Section 306 has twice been recodified, but the recodifications were not intended to make any substantive changes to the statute. *See Clinchfield R.R. Co. v. Lynch*, 700 F.2d 126, 128 n.1 (4th Cir. 1983). We cite to the current codification of section 306 at 49 U.S.C. § 11501, but refer to the statute in the text as "section 306 of the 4-R Act."

[2]49 U.S.C. § 11501(b) provides in relevant part:

The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

(1)   Assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.

(2)   Levy or collect a tax on an assessment that may not be made under paragraph (1) of this subsection.

In this lawsuit, CSX alleges that the Board's tax assessments of its rail transportation property for the 2000 tax year violate section 306. Under West Virginia law, the Board is responsible for determining the assessed value of rail transportation property and other public service company property in West Virginia. W. Va. Code § 11-6-1. Non-public service property in West Virginia is assessed for ad valorem tax purposes by tax assessors for the counties in which the property is located. When multiplied by the tax rate, these assessed values determine the amount of ad valorem taxes to be paid. CSX alleges that for the 2000 tax year, the Board assessed its rail transportation property in West Virginia at a value that was at least 60% of the property's actual market value. CSX claims that, in contrast, the non-public service property of commercial and industrial taxpayers in West Virginia was assessed for the 2000 tax year at 55% or less of the property's actual market value. According to CSX, this disparity violates section 306. CSX has withheld payment of the portion of its ad valorem taxes based on the Board's allegedly excessive assessment. It seeks prospective injunctive and declaratory relief that would prevent the Board and its officers from continuing to assess its property in an illegal manner and from collecting payment of the allegedly illegal taxes that CSX has refused to pay.

Even this brief recitation of the facts produces a distinct sense of deja vu. Although this case is new in the sense that it challenges the ad valorem tax assessments for the 2000 tax year, we dealt with essentially the same legal arguments and factual contentions regarding the 1996 tax year in *CSX Transportation, Inc. v. Board of Public Works of the State of West Virginia*, 138 F.3d 537 (4th Cir. 1998) (*CSX I*).[3] In that case, as in this one, CSX and another railroad had withheld payment of the allegedly illegal portion of their ad valorem taxes and sought an injunction against future collection of the illegal taxes. The district court ruled that it had no jurisdiction to hear the case. It reasoned that section 306's purported abrogation of state sovereign immunity could not be justified as an exercise of Congress's power under Section Five of the Fourteenth Amendment and was

---

[3]We addressed a challenge by CSX and another railroad to the Board's ad valorem tax assessments for the 1993 tax year in *CSX Transportation, Inc. v. Board of Public Works of the State of West Virginia*, 95 F.3d 318 (4th Cir. 1996).

therefore invalid under the Supreme Court's recent decision in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). The district court also ruled that *Ex Parte Young* was inapplicable on the ground that the railroads sought retrospective rather than prospective relief. On appeal, we found it unnecessary to reach the question of whether section 306 was a valid abrogation of state sovereign immunity "because even assuming that section 306 cannot be justified as an exercise of Section Five of the Fourteenth Amendment . . . *Ex Parte Young* authorizes an injunction . . . that will provide the railroads with complete relief." *CSX I*, 138 F.3d at 540.

*CSX I* appears to stand, then, for the proposition that the relief sought by CSX in this case is available under *Ex Parte Young* regardless of whether section 306 validly abrogates state sovereign immunity. The district court in this case agreed, and therefore denied the Board's motion to dismiss the case as barred by West Virginia's Eleventh Amendment immunity. The Board has filed this interlocutory appeal. *See P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 141 (1993) (holding that denial of a motion to dismiss on grounds of Eleventh Amendment immunity is immediately appealable under the collateral order doctrine).

## II.

The Board labors mightily to explain why its sovereign immunity arguments are not precluded by *CSX I*. Yet even assuming the absence of issue preclusion, we have no doubt that our decision in *CSX I* controls the outcome of this case. To the extent that the Board advances arguments that were not before us in that case, we find those arguments unconvincing. As in *CSX I*, we hold that CSX's lawsuit may go forward under *Ex Parte Young* regardless of whether section 306 validly abrogates West Virginia's Eleventh Amendment immunity.[4]

---

[4]In the time since our decision in *CSX I*, three circuits have held that section 306 validly abrogates state sovereign immunity under Section Five of the Fourteenth Amendment. *See Burlington N. and Santa Fe Ry. Co. v. Burton*, 270 F.3d 942 (10th Cir. 2001); *Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of the Commonwealth of Penn.*, 141 F.3d 88 (3d Cir. 1990); *Oregon Short Line R.R. Co. v. Dep't of Revenue Oregon*, 139 F.3d 1259 (9th Cir. 1998).

The Board concedes that, under *CSX I*, the relief sought by CSX in this case is prospective rather than retrospective and that this relief would ordinarily be available under *Ex Parte Young*. It argues, however, that *Ex Parte Young* does not apply here for two reasons. First, the Board contends that CSX cannot enforce its section 306 rights under *Ex Parte Young* because the substantive provisions of section 306 are unconstitutional in their entirety. Second, the Board claims that *Ex Parte Young* is inapplicable under *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997), because the relief sought by CSX would unduly infringe upon West Virginia's "special sovereignty interest" in taxing the property within its borders. Neither argument is persuasive.

In its first argument, the Board contends that if section 306 does not effectively abrogate state sovereign immunity, the statute is unconstitutional across the board and that relief under *Ex Parte Young* is therefore unavailable. Consequently, the Board argues that (despite *CSX I*) we must reach the question of whether section 306 validly abrogates West Virginia's Eleventh Amendment immunity. We agree that *Ex Parte Young* cannot help CSX if section 306 is unconstitutional, but we are puzzled by the Board's apparent claim that the constitutionality of section 306 in its entirety (and thus the applicability of *Ex Parte Young*) depends on whether the provision validly abrogates state sovereign immunity. The Board's argument turns on the claim that, unlike other statutes discussed in the Supreme Court's cases on the *Ex Parte Young* doctrine, section 306 is unique because it applies *only* to states. The Board suggests that if we strip away the aspects of the statute that are rendered invalid by the Eleventh Amendment, nothing remains that could be enforced through the mechanism of *Ex Parte Young*. In other words, the Board's argument is that when a statute applies only to states, its failure to validly abrogate Eleventh Amendment immunity also renders it unconstitutional in its entirety. Without expressing any opinion on the possible merits of this argument in a different case, we conclude that the argument does not work here because section 306 can be enforced against entities that are not protected by Eleventh Amendment immunity. Section 306 applies not only to states, but also to "subdivision[s] of a State" and "authorit[ies] acting for a State or subdivision of a State." 49 U.S.C. § 11501(b). As CSX points out, it is hornbook law that counties, cities, and other subdivisions of states are not protected by the

Eleventh Amendment. *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 667 n.12 (1974); *Gray v. Laws*, 51 F.3d 426, 431 (4th Cir. 1995).[5] As a result, section 306 would not be unconstitutional in its entirety even if the Board were correct that (1) section 306 fails to validly abrogate state sovereign immunity and (2) a statute applying only to states that fails to abrogate state sovereign immunity is therefore unconstitutional. Accordingly, we conclude that the Board's first argument fails.

The Board's second argument is that the *Ex Parte Young* doctrine cannot be used to enforce section 306 because West Virginia's authority to tax the rail transportation property within its boundaries is a protected "special sovereignty interest" under the Supreme Court's decision in *Coeur d'Alene*. We disagree. First, we note that because *Coeur d'Alene* was decided prior to our decision in *CSX I* and the parties were given an opportunity to brief the court on its implications, we think it likely that the Board's *Coeur d'Alene* argument is precluded. Second, even if the argument is properly before us, we refuse to read *Coeur d'Alene* so broadly as the Board suggests. In *Coeur d'Alene*, the Supreme Court considered a claim by the Coeur d'Alene Tribe that federal law gave the tribe beneficial ownership of the submerged lands and banks of Lake Coeur d'Alene in Idaho. The Court held that even prospective relief under *Ex Parte Young* was unavailable because the lawsuit was the "functional equivalent of a quiet title action which implicate[d] special sovereignty interests." *Coeur d'Alene*, 521 U.S. at 281. The Court pointed out that the lawsuit sought a "determination that the lands in question are not even within the regulatory jurisdiction of the State," as well as injunctive relief that "would bar the State's principal officers from exercising their governmental powers and authority over the disputed lands and waters." *Id.* at 282. This, the Court explained, would affect Idaho's sovereign interests "in a degree fully as intrusive as almost any con-

---

[5]The original language of section 306 further undermines the Board's argument. As originally enacted as part of the 4-R Act, the statute prohibited discriminatory taxation of railroads by "a State, a political subdivision of a State, or a governmental entity *or person* acting on behalf of such State or subdivision." 4-R Act, Pub. L. No. 94-210, § 306, 90 Stat. 31, 54 (1976) (emphasis added). As we noted above, *see supra* at 3 n.1, the changes made to the language of section 306 during its recodification were not intended to be substantive.

ceivable retroactive levy upon funds in its Treasury." *Id.* at 287. In sum, *Coeur d'Alene* ruled that *Ex Parte Young* did not apply because the Tribe's lawsuit was more than simply a suit to enjoin state officials from an ongoing violation of federal law. Instead the lawsuit was "the functional equivalent of a suit against the State of Idaho itself because it sought to dispossess the State from land within its borders and to remove that land from the State's regulatory authority." *TFWS, Inc. v. Schaefer*, 242 F.3d 198, 205 (4th Cir. 2001) (internal quotation marks and citation omitted); *see also Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1048 (9th Cir. 2000) (stating that the *Young* doctrine was inapplicable in *Coeur d'Alene* because of the "unique divestiture of the state's broad range of controls over its own lands" and that "the question posed by *Coeur d'Alene* is not whether a suit implicates a core area of sovereignty, but rather whether the relief requested would be so much a *divestiture* of the state's sovereignty as to render the suit as one *against the state itself*"). Although we recognize the historical and practical importance of a state's powers of taxation, we do not think the relief sought by CSX under section 306 of the 4-R Act approaches the level of interference with state sovereignty that was present in *Coeur d'Alene*. Section 306 neither prevents West Virginia from taxing rail transportation property nor dictates the absolute rate at which the state may tax such property. It simply prevents state officials from imposing discriminatory taxes on rail carriers. This is the sort of garden variety prospective relief that has traditionally been available under *Ex Parte Young*, and it remains available after *Coeur d'Alene*. *Cf. TFWS*, 242 F.3d at 206 (explaining that *Ex Parte Young* was applicable where the plaintiff was "not seeking to strip Maryland of its authority to regulate liquor under the Twenty-first Amendment," but simply sought "to require [the relevant state official] to regulate in a way that is consistent with the Sherman Act"). We conclude that the Board's second argument fails because CSX's claims under section 306 do not threaten a sufficiently significant intrusion on West Virginia's powers of taxation to implicate the state's "special sovereignty interests." *Cf. Hardin*, 223 F.3d at 1049 (holding that suit by federally recognized Native American tribe seeking prospective relief against certain applications of California's sales and use tax did not interfere with the state's taxation powers enough for *Coeur d'Alene* to bar application of the *Ex Parte Young* doctrine); *but see ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1193 (10th Cir. 1998) (holding that "a state's power to assess and levy personal prop-

erty taxes on property within its borders" qualifies as a special sovereignty interest under *Coeur d'Alene*).

We have considered the other arguments raised by the Board and conclude that they do not merit discussion.

## III.

For the foregoing reasons, we conclude that the Board has failed to show why this case is not controlled by our decision in *CSX I*. We reaffirm our holding in that case that prospective relief against the individual defendants is available under *Ex Parte Young* regardless of whether section 306 validly abrogates West Virginia's Eleventh Amendment immunity. Accordingly, the district court's order denying the Board's motion to dismiss is

*AFFIRMED*.