JORDAN, Circuit Judge,
concurring in part and dissenting in part:
I join the majority’s opinion with respect to the dismissal of Counts III-VI, which *1248 expressly seek injunctive relief in the form of refunds to the Tribe of Florida’s already-collected fuel taxes, but respectfully dissent from the dismissal of Counts I and II, which seek a declaratory judgmént against Florida officials that the future imposition of certain fuel taxes violates the Constitution.
I
“[Sjovereign immunity ... ■ generally bar[s] tax refund claims from being brought in [federal court].” Reich v. Collins, 513 U.S. 106, 110, 115 S.Ct. 547, 130 L.Ed.2d 454 (1994). Because Counts III— VI of the Tribe’s complaint seek “the recovery of money from the [S]tate” through refunds, I concur with the majority that “the [S]tate is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.” Ford Motor Co. v. Dep’t of Treasury of Ind., 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945) (holding that a taxpayer’s suit against state treasury officials for “a refund of gross income taxes paid” was an action against the state and barred by the Eleventh Amendment). See also DeKalb Cnty. Sch. Dist. v. Schrenko, 109 F.3d 680, 691 (11th Cir.1997) (“[I]t is obvious that this is, in reality, a suit against the State itself. The only action the defendants are required to take to comply with the district court’s injunction is to pay from the state treasury the additional funds specified by the district court.”).
I do not, however, agree that the Eleventh Amendment bars Counts I and II as against the Department of Revenue’s interim executive director and deputy executive director under Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Significantly, Counts I and II do not ask for refunds, but rather seek only a declaration that fuel purchased by the Tribe for use on tribal land or in the provision of essential governmental services is exempt from the fuel tax under the Indian Commerce Clause, U.S. Const. Art. I, § 8, cl. 3. Such relief, in my opinion, is permitted under Ex parte Young, which generally allows suits for declaratory and prospective relief against state officials in charge of administering or enforcing unconstitutional laws. See Va. Office for Prot. & Advocacy v. Stewart, — U.S. -, 131 S.Ct. 1632, 1638, 179 L.Ed.2d 675 (2011).[1]
A
Though it may be an “expedient ‘fiction,’ ” Ex parte Young is “necessary to ensure the supremacy of federal law.” Cent. Va. Cmty. College v. Katz, 546 U.S. 356, 378 n. 14, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006) (citation omitted). Accordingly, “[i]n determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a ‘straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.’ ” Verizon Md., Inc. v. Pub. Serv. Comm’n of Md., 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (citation omitted and alteration in original).
Counts I and II satisfy this straightforward inquiry. They allege an ongoing violation of federal law, i.e., that Florida’s fuel tax violates (and will continue to violate) the Indian Commerce Clause as applied to *1249 fuel purchased by the Tribe for use on tribal land or in the provision of essential governmental services. See Complaint, D.E. 1 at ¶¶30, 37. And they seek, at least in part, a declaration that fuel which has yet to be purchased or taxed is not subject to the tax when it is used by the Tribe on tribal land or in the provision of essential governmental services. See id. at ¶¶33, 38. Such “relief [is] properly characterized as prospective.” Verizon Md., 535 U.S. at 645, 122 S.Ct. 1753 (internal quotation marks omitted).
The majority relies heavily on Ford Motor Co., but that case is easily distinguishable. First, the taxpayer there expressly sought a “refund of gross income taxes paid.” 323 U.S. at 460, 65 S.Ct. 347. Second, the taxpayer sued under a state statute which provided for an action against the state itself. See id. at 462-63, 65 S.Ct. 347. Here, as noted earlier, Counts I and II seek only a declaratory judgment that the future imposition and collection of Florida’s fuel tax would be unconstitutional, and, in Counts I and II, the Tribe sued the interim executive director and deputy executive director pursuant to Ex parte Young.
As the Supreme Court and various circuits have recognized, the Eleventh Amendment does not bar prospective challenges to allegedly unconstitutional state taxes when such suits are “brought against state officers in their official capacity and not against the State in its own name.” Blatchford v. Native Village of Noatak, 501 U.S. 775, 785 & n. 3, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991) (“Absent [the Tax Injunction Act], state taxes could constitutionally be enjoined.”). See also Muscogee (Creek) Nation v. Pruitt, 669 F.3d 1159, 1168 (10th Cir.2012) (holding that the Eleventh Amendment did not bar claims for prospective declaratory and injunctive relief in a suit challenging Oklahoma statutes that taxed and regulated the sale of cigarettes and other tobacco products); Agua Caliente Band of Cahuilla Indians v. Hardin, 223 F.3d 1041, 1049 (9th Cir.2000) (holding that the Eleventh Amendment did not bar an Indian tribe from seeking a declaratory judgment precluding the imposition of California’s sales and use tax on purchases of food and beverages by non-tribal members at a tribal resort on reservation land); CSX Transp., Inc. v. Bd. of Pub. Works of the State of W. Va., 138 F.3d 537, 541 (4th Cir.1998) (“An injunction against the future collection of illegal taxes, even those that already have been assessed, is prospective, and therefore available under the Ex parte Young doctrine.”). The only distinction here is that Florida precollects its fuel tax from suppliers for mere “administrative convenience,” Fla. Stat. § 206.41(4)(a), but that is a distinction without a difference, and the majority’s opinion therefore creates a circuit split.
Florida’s choice to precollect the challenged fuel tax now and in the future does not somehow transform the Tribe’s requested declaratory relief from permissibly prospective to impermissibly retrospective. Retrospective relief is backward-looking, and seeks to remedy harm “resulting from a past breach of a legal duty on the part of the defendant state officials.” Edelman v. Jordan, 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (emphasis added). To illustrate, the Supreme Court held in Edelman that a judgment requiring the state to pay wrongfully withheld welfare benefits amounted to a “retroactive award of monetary relief’ because it “require[d] payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation to those whose applications were [incorrectly] processed” before the plaintiffs had filed suit. Id. By contrast, the al *1250 leged harm here does not arise from the past breach of a legal duty; it results from the future and continuing imposition of an allegedly unconstitutional tax on fuel that has yet’ to be purchased or taxed. See, e.g., CSX Transp., 138 F.3d at 542 (rejecting argument “that an injunction against the future collection of illegal taxes is retrospective and unavailable merely because the state has already decided how much tax to collect, even though the money is still safely in the taxpayer’s pocket”).
B
Were the Tribe to prevail in its constitutional challenge — a matter on which I do not express any views — the district court would issue a declaratory judgment that the fuel tax could not be applied to future purchases of fuel by the Tribe for use on tribal land and in the provision of essential governmental services. The majority believes that such a judgment would be tantamount to an order requiring Florida to issue refunds. But it is difficult to understand, linguistically or otherwise, how asking to stop something that is going to continue indefinitely into the future can be legally characterized as a retrospective demand for payment of money already in the State’s treasury. There are obviously fuel taxes that Florida has not yet precollected, not even from suppliers, and for such unassessed future taxes (say, for example, taxes that will be preeollected in May of 2015, a year from now) any declaratory relief necessarily has to be prospective. How can a taxpayer possibly seek or get a refund- — defined as a “sum repaid,” 2 Shorter Oxford English Dictionary 2510 (5th ed.2002), or “[t]he return of money to a person who overpaid,” Black’s Law Dictionary 1394 (9th ed.2009) — for a tax that has not yet been paid by anyone?
Likewise, it is impossible to characterize a judgment which declares the future imposition and collection of taxes unconstitutional as an award of damages. “Traditional money damages are payable to compensate for the harm of past conduct, which subsists whether future harm is threatened or not.” Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 211 n. 5, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (Sealia, J., dissenting) (emphasis added). See also F.T.C. v. Leshin, 719 F.3d 1227, 1232 (11th Cir.2013) (“The most common combination of equitable and legal remedies, for instance, is a district court’s grant of both an injunction that prevents future harm along with an award of damages that compensates for past harm.”).
The Florida officials sued here could choose to abide by any adverse declaratory judgment by providing any form of relief that would cure the unconstitutional application of the fuel tax. Cf. McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, 496 U.S. 18, 51, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) (“When a State penalizes taxpayers for failure to remit their taxes in a timely fashion, thus requiring them to pay first before obtaining review of the tax’s validity, federal due process principles long recognized by our cases require the State’s postdeprivation procedure to provide a ‘clear and certain remedy[ ]’ for the deprivation of tax moneys in an unconstitutional manner.”) (citation omitted). For example, the Florida officials could comply with a declaratory judgment by eliminating or modifying, in whole or in part, the procedure for the precollection of fuel taxes with respect to future purchases of fuel by the Tribe; they could require gas stations to charge members of the Tribe a different, tax-exempt price on fuel purchased for use on tribal lands or in the provision of essential governmental services; or they could issue coupons or vouchers — which could later be reconciled — entitling the Tribe to a discount of the purchase price.
*1251 If the Florida officials refused to abide by a declaratory judgment and continued enforcing (and collecting) the fuel tax from the Tribe in an unconstitutional manner, the district court could enforce its judgment through contempt proceedings, as happened in Ex parte Young itself, see 209 U.S. at 159-60, 28 S.Ct. 441 (upholding lower court’s order of contempt, which committed a state attorney general to federal custody for violating a federal injunction barring enforcement of state law held to be unconstitutional), or through financial penalties, as explained in Hutto v. Finney, 437 U.S. 678, 690, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (“In exercising their prospective powers under Ex parte Young and Edelman ..., federal courts are not reduced to issuing injunctions against state officers and hoping for compliance. Once issued, an injunction may be enforced. Many of the court’s most effective enforcement weapons include financial penalties.”) (citations omitted).
Should the State decide not to change its precollection scheme as to future taxes and wish to avoid contempt proceedings or the imposition of financial penalties, then it is likely that the Florida officials would have to issue refunds to the Tribe in order to comply with any declaratory judgment exempting the Tribe from the fuel tax in the future. But in that scenario the issuance of refunds would be the result of a choice made by Florida, see Quern v. Jordan, 440 U.S. 332, 347, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), and the existence of an Eleventh Amendment bar does not depend on the mere difficulty (or expense) of compliance with a prospective federal decree. See Milliken v. Bradley, 433 U.S. 267, 289, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) (“[Ex parte Young ] permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury.”).[2]
C
The majority’s opinion, as I read it, apparently would allow a state to shield the enforcement of any tax, no matter how constitutionally untenable, from challenge in federal court simply by enacting a precollection procedure. But there is no “precollection exception” to Ex parte Young, and the supremacy of federal law does not rest on the type of tax scheme that Florida has designed. States cannot legislate their way around Ex parte Young, and in other contexts the Supreme Court has made clear that the supremacy of federal law is not dependent on the ingenuity of obstacles created by state law. See Haywood v. Drown, 556 U.S. 729, 739, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009) (“A [state] jurisdictional rule cannot be used as a device to undermine federal law, no matter how evenhanded it may appear.”); Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372-73, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000) (“We will find preemption ... where ‘under the circumstances of [a] particular case, [the challenged state law] *1252 stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.’ ”) (quoting Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)) (second and third alterations in original).
“Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law.” Green v. Mansour, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). The Tribe’s requested declaratory relief in Counts I and II fulfills this function because it seeks to “ensure that the state [fuel] tax be applied [in the future] by [Florida] officials in a manner consistent with federal law.” Agua Caliente, 223 F.3d at 1049. As a result, I do not believe that Counts I and II are barred by the Eleventh Amendment.
II
Because the majority affirms across the board on Eleventh Amendment grounds, it does not reach the Tribe’s arguments that the district court erred in dismissing the complaint under the Tax Injunction Act (TIA), 28 U.S.C. § 1341, and the Rooker-Feldman doctrine, based on Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Because I would allow Counts I and II to proceed under Ex parte Young, I write to briefly explain why neither of these other jurisdictional barriers applies.
Although the TIA generally prohibits federal courts from “enjoin[ing], suspending] or restraining] the ... collection of any tax under State law,” 28 U.S.C. § 1341, it does not apply to Indian tribes “seeking to enjoin the enforcement of a state tax law” in a suit brought under 28 U.S.C. § 1362. See Moe v. Confederated Salish & Kootenai Tribes, 425 U.S. 463, 474-75, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976). See also Blatchford, 501 U.S. at 785, 111 S.Ct. 2578 (explaining that “Moe held § 1362 to eliminate [the TIA’s] application to tribal suits”). The district court’s contrary conclusion, based on its determination that “the applicability of the TIA in this case hinges on the locus of the fuel tax,” D.E. 27 at 9, in my view conflates the merits of the Tribe’s claims with the jurisdictional inquiry demanded by the intersection of the TIA and § 1362. Whether (or not) the TIA applies does not depend on whether the Tribe will succeed on its claims. I would therefore reverse the district court’s dismissal of the Tribe’s claims under the TIA.
I would also set aside the district court’s dismissal of the Tribe’s claims under the Rooker-Feldman doctrine. “The Rooker-Feldman doctrine is ... confined to ... cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.” Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). See also Brown v. R.J. Reynolds Tobacco Co., 611 F.3d 1324, 1330 (11th Cir.2010) (“The doctrine bars the losing party in state court ‘from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party’s claim that the state judgment itself violates the loser’s federal rights.’ ”) (quoting Johnson v. De Grandy, 512 U.S. 997, 1005-06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994)). It “does not otherwise override or supplant preclusion doctrine.” Exxon Mobil, 544 U.S. at 284, 125 S.Ct. 1517. See also Bates v. Harvey, 518 F.3d 1233, 1240 (11th Cir.2008) (“The Rooker-Feldman doctrine is distinct from issue preclusion.... ”).
*1253 The district court dismissed the Tribe’s claims because the Fourth District, in Florida Department of Revenue v. Seminole Tribe of Florida, 65 So.3d 1094 (Fla. 4th DCA 2011) (“Seminole Trtbe /”), had “addressed precisely the same issues contained in the claims in the instant suit.” D.E. 27 at 6. In so ruling, the district court “expanded Rooker-Feldman’s jurisdictional bar to include federal actions that simply raise claims previously litigated in state court.” Exxon Mobil, 544 U.S. at 287 n. 2, 125 S.Ct. 1517. See also id. at 293, 125 S.Ct. 1517 (Rooker-Feldman does not “stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court”).
Ill
In our constitutional scheme, sovereign immunity “works only because of the exceptions to it,” and the “most important of these” is “the suit against an officer” under Ex parte Young. John T. Noonan, Narrowing the Nation’s Power: The Supreme Court Sides with the States 85 (2002). The Eleventh Amendment, in my mind, does not bar Counts I and II of the Tribe’s complaint under Ex parte Young. I would therefore set aside the dismissal of these Counts, and remand for the district court to determine whether the Fourth District’s judgment in Seminole Trtbe I is entitled to preclusive effect under Florida law, and/or whether Counts I and II should be dismissed for failure to state a claim. See Appellees’ Br. at 17-22, 33-39.

. The Florida officials who have been sued here are proper defendants under Ex pane Young, as they, “by virtue of [their] offices, ha[ve] some connection with the unconstitutional act or conduct complained of.” Luckey v. Harris, 860 F.2d 1012, 1015-16 (11th Cir.1988) (internal quotation marks and citation omitted) (second alteration in original). They are, in the words of Women’s Emergency Network v. Bush, 323 F.3d 937, 949 (11th Cir.2003), "responsible for” the enforcement of the fuel tax.

. I note, as well, that the Supreme Court has not hesitated to enforce a lower court’s mandamus order requiring county auditors and county treasurers, who were employed by the state, to levy a tax to pay a federal judgment even though those officials were not permitted to impose such a tax under state law. See Graham v. Folsom, 200 U.S. 248, 254-55, 26 S.Ct. 245, 50 L.Ed. 464 (1906) (rejecting argument that the mandamus relief was effectively relief against the state itself). If forcing such officials to impose a tax prohibited by state law is not constitutionally problematic, requiring Florida officials to exempt the Tribe from the fuel tax in the future isn’t either. See also Milliken, 433 U.S. at 289, 97 S.Ct. 2749 (affirming a district court order requiring the state to pay half of a court-ordered desegregation plan even though the Ex parte Young defendants were only state enforcement officials).