**SIERRA CLUB, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF TRANSPORTATION (USDOT); Secretary of Transportation Norman Mineta; Federal Highway Administration (FHWA); Administrator of FHWA Mary Peters; Division Administrator of FHWA Nevada Division, John Price, Defendants.**

No. CV–S–02–0578–PMP(RJJ).

United States District Court, D. Nevada.

Feb. 14, 2003.

Patrick Gallagher, Sanjay Narayan, Joanne Spalding, Sierra Club, San Francisco, CA, Margaret L. Sanner, Morris Pickering & Sanner, Las Vegas, NV, Robert E. Yunke, Boulder, CO, for Sierra Club, Inc., Plaintiff.

Rimantas A. Rukstele, U.S. Attorney Office—LV, Las Vegas, NV, for Federal Highway Administration, Mineta, Norman Y., Peters, Mary, Price, John, U.S. Dept Of Transportation, Defendants.

## ORDER

PRO, Chief Judge.

Presently before this Court are four motions. Defendants United States Department of Transportation ("USDOT"); Secretary of Transportation Norman Mineta; Federal Highway Administration ("FHWA"); FHWA Administrator, Mary Peters; and FHWA Division Administrator, John Price (collectively "Defendants") filed a Motion to Dismiss (Doc. # 11) on August 7, 2002. Plaintiff Sierra Club filed an Opposition to Defendants' Motion to Dismiss ([hereinafter "Dismissal Opp'n"] Doc. # 18) on September 20, 2002. Defendants filed a Reply to Sierra Club's Opposition to Motion to Dismiss ([hereinafter "Dismissal Reply"] Doc. # 23) on November 8, 2002.

Sierra Club filed a Motion to Convert Defendants' FRCP 12(b)(6) Motion to a FRCP 56 Motion, to Compel the Filing of the Administrative Record and Proposed Briefing Schedule (Doc. # 19) on September 20, 2002. Sierra Club also filed a Corrected Motion to Convert Defendants' FRCP 12(b)(6) Motion to a FRCP 56 Motion, to Compel the Filing of the Administrative Record and Proposed Briefing Schedule (Doc. # 20)[1] on September 24, 2002. Defendants filed a Response to Sierra Club's Motion to Convert ([hereinafter "Convert Opp'n"] Doc. # 24) on October 24, 2002. Sierra Club filed a Reply to Defendants' Response to Sierra Club's Motion to Convert ([hereinafter "Convert Reply"] Doc. # 27) on November 7, 2002.

Defendants filed a Motion to Stay Discovery (Doc. # 22) on October 10, 2002. Sierra Club filed an Opposition to Defendants' Motion to Stay Discovery ([hereinafter "Stay Opp'n"] Doc. # 26) on October 28, 2002. Defendants filed a Reply to Sierra Club's Opposition to Defendants' Motion to Stay Discovery ([hereinafter "Stay Reply"] Doc. # 28) on November 8, 2002.

Sierra Club filed a Motion to Compel Discovery [FRCP 37(a)] on October 28, 2002. Defendants filed a Response to Sierra Club's Motion to Compel Discovery ([hereinafter "Compel Opp'n"] Doc. # 29) on November 8, 2002. Sierra Club filed a Reply in Support of Motion to Compel Discovery [FRCP 37(a)] ([hereinafter "Compel Reply"] Doc. # 30) on November 22, 2002.

## I. BACKGROUND

Sierra Club seeks injunctive and declaratory relief relating to the widening of a section of US–95 located in northwest Las Vegas ("US–95 Widening Project"). (Compl.¶¶ 34–36.) Prior to the preparation of the final Environmental Impact Statement ("EIS"), Sierra Club and the Environmental Protection Agency ("EPA") both expressed concern about the accuracy of the population estimates and traffic forecasts utilized for the EIS. (Compl.¶¶ 60, 63.) Despite this input, Defendants utilized the original estimates and forecasts to complete the final EIS. On January 28, 2000, FHWA Division Administrator, John Price, signed the Record of Decision approving the US–95 Widening Project. (Mot. to Dismiss, Ex. 3, Record of Decision.)

Sierra Club claims that in reaching the decision to approve the US–95 Widening Project, FHWA did not adequately discharge various statutory duties. (Compl.¶ 1.) Specifically, Sierra Club claims that the FHWA: (1) violated its duty to inform the public of the health risks associated with the project; (2) failed

---

1. Throughout this Order, citations to Sierra Club's Motion to Convert refer to this correct-ed document.

to conduct proper public hearings; (3) failed to adequately perform impact analyses to compare the health risks posed by the various alternatives; and (4) failed to adopt mitigation efforts to eliminate or reduce the health risks. (Compl.¶¶ 1, 3, 5, 6.) Sierra Club also challenges the adequacy of the EIS prepared for the project and the FWHA's refusal to prepare a Supplemental EIS ("SEIS"). (Compl.¶¶ 2, 4.)

Sierra Club requested a SEIS on June 20, 2000, citing the use of inadequate traffic forecasts and the FHWA's alleged failure to consider studies indicating the potential health risks associated with exposure to air pollutants emitted from motor vehicles on major highways. (Compl.¶ 84.) The FHWA rejected Sierra Club's first request for a SEIS on July 17, 2000. (Compl.¶ 96.)

Sierra Club then commissioned independent consultants to perform two studies regarding the effect that the US–95 Widening Project would have on people who live, work, or attend school near that portion of the highway. (Compl.¶¶ 98–100.) In the first study ("RSG Study") a research company was commissioned to estimate air toxin exposure by modeling motor vehicle emissions, using the traffic forecasts prepared by the Regional Transportation Commission.[2] (Compl.¶ 99.) The RSG Study then utilized the resulting emission estimates to determine how the increased emissions would affect the exposure levels to certain toxins which contribute the greatest cancer risk.[3] The RSG study "concluded that the proposed expansion [would] significantly increase the ex-

posure of the public to [these] air toxins ... and recommended that FHWA complete a SEIS to evaluate the health risks posed by this increased exposure and identify alternatives to mitigate those effects." (*Id.*)

Sierra Club commissioned a second study "EHE Study" to consider whether the increased exposure projected by the RSG Study would likely result in "risks of cancer and other adverse health outcomes high enough to exceed the [EPA] threshold of public health concern." (Compl.¶ 100.) The EHE Study concluded that the increased exposure to vehicle emissions found near heavily traveled highways would result in significantly increased health risks, including a higher risk of cancer and harmful respiratory and cardiovascular effects. (*Id.*) The EHE Study concluded that the US–95 Widening Project would likely result in a significant number of excess cancers. (*Id.*) Like the RSG Study, the EHE Study recommended that a SEIS be prepared to evaluate the health risks and identify alternatives to mitigate the risks. (*Id.*)

On February 25, 1991, the EPA published data indicating that, based upon a review of federal agency policies regarding acceptable cancer risks under various statutes requiring protection of public health, it had found that cancer "risks less than 1 in 1 million generally can be found acceptable ... while risks greater than that level require further analysis as to their acceptability." (Compl. ¶ 102; *see also* 56 Fed. Reg. 7757 (February 25, 1991).) Further,

**2.** The studies commissioned by Sierra Club utilized Defendants' traffic forecasts, which they separately challenge as inadequate. (*See* Compl. ¶ 84.)

**3.** The study utilized toxic exposure estimates taken from another study, entitled "The Multiple Air Toxins Exposure Study ('Mates–II')", performed in the Los Angeles, California ba-

sin. This study was finalized by the South Coast Air Quality Management District in March, 2000. (Compl.¶ 73.) Sierra Club claims that it had previously, and unsuccessfully, attempted to rely on the Los Angeles study as support for its contention that the potential for adverse health effects as a result of the US–95 Widening Project warranted further study. (Compl.¶¶ 73, 97.)

the EPA noted that "federal agencies have generally taken action to reduce exposures when cancer risks are greater than 1 in 10,000." (*Id.*) In March, 2001, the EPA "published a list of 'Mobile Source Air Toxics (MSAT),' which categorized diesel particulate matter and diesel exhaust organic gases as 'hazardous air pollutants' under the Clean Air Act." (Compl.¶ 105.)

Based on the EPA's findings and on the results of the two studies commissioned by Sierra Club, on January 7, 2002, Sierra Club again asked the FHWA to prepare a SEIS. (Compl.¶ 106.) The FHWA rejected Sierra Club's renewed request on February 5, 2002. (Compl.¶ 107.)

Sierra Club then brought this action, pursuant to the National Environmental Policy Act, 42 U.S.C. §§ 4321 et seq. ("NEPA"), the Federal–Aid Highway Act ("FAHA") as amended by the Transportation Equity Act for the 21st Century, 23 U.S.C. §§ 101 et seq. (TEA–21), the Administrative Procedure Act, 5 U.S.C. §§ 500 et seq. ("APA") and these statutes' implementing regulations.

On January 30, 2003, a hearing was conducted on all pending motions.

## II. DISCUSSION

Defendants' Motion to Dismiss is based principally on the affirmative defense of laches. Plaintiff opposes the Motion to Dismiss on the basis that the laches defense is inappropriate under the facts of this case and alternatively, that Defendants cannot prove laches. Simultaneously, Plaintiff moves to convert Defendants Motion to Dismiss to a Motion for Summary Judgment because Defendants rely on matters outside of the pleadings. Defendants concede that the Motion should be converted.

### A. Motion for Summary Judgment

 Although Plaintiff and Defendants agree that the Motion to Dismiss should be treated as a Motion for Summary Judgment, there is disagreement among the parties as to whether the Converted Motion for Summary Judgment is ripe for disposition.

Sierra Club requests additional time to bring cross-motions for summary judgment as to two of the claims and for full briefing on Defendants' summary judgment motion. Further, Sierra Club seeks an order to compel Defendants to file the administrative record so that this Court may conduct an appropriate judicial review of the FHWA's final administrative action. On the other hand, Defendants claim that because both sides have presented extrinsic evidence, both have arguably received a reasonable opportunity to be heard.

As to the issue of laches, this Court finds that both sides have received a reasonable opportunity to be heard. Plaintiff's Opposition to Defendant's Motion to Dismiss set forth clear arguments as to why the laches defense is inappropriate. Plaintiff also presented extrinsic evidence to support its position. Further, both sides received an opportunity to present arguments during the hearing held on January 30, 2003. The goals of judicial efficiency and economy also favor the Court considering the laches argument at this time.

### B. Laches

 Declaratory and injunctive relief are equitable remedies and may thus be barred by laches. *See Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1050 (9th Cir.2000). Whether the equitable defense of laches bars an action is a discretionary determination to be made by the Court based upon the particular facts presented. *Apache Survival Coalition v. United States*, 21 F.3d 895, 905 (9th Cir.1994); *Coalition for Can-*

*yon Preservation v. Bowers,* 632 F.2d 774, 779 (9th Cir.1980).

To determine whether a suit is barred by laches, a court must consider two criteria: the diligence of the party against whom the defense is asserted and the prejudice to the party asserting the defense. *Apache,* 21 F.3d at 905; *Coalition for Canyon Preservation,* 632 F.2d at 779. However, cases involving environmental litigation are subject to a special laches standard. *Apache,* 21 F.3d at 907. This special standard requires that courts recognize that "laches must be invoked sparingly in environmental cases because ordinarily the plaintiff will not be the only victim of alleged environmental damage." *Preservation Coalition, Inc. v. Pierce,* 667 F.2d 851, 854 (9th Cir.1982); *see also Apache,* 21 F.3d at 905–06 (also recognizing that "laches must be invoked sparingly" in suits brought to vindicate public interest).

The Ninth Circuit has considered the applicability of the laches defense in a variety of cases. *See e.g., Neighbors of Cuddy Mountain v. United States Forest Serv.,* 137 F.3d 1372, 1382 (9th Cir.1998) (considering the applicability of the laches defense, a question which had not been reached by the district court, and holding that laches did not bar the action); *Apache Survival Coalition,* 21 F.3d 895 (concluding that although the district court utilized the incorrect laches standard, the action was barred even under the "special" laches standard which is to be used in environmental litigation); *Coalition for Canyon Preservation v. Bowers,* 632 F.2d 774 (reversing the district court's application of the laches defense).

Defendants claim that both criteria necessary to establish a laches defense have been satisfied because Sierra Club unreasonably delayed filing suit even though Sierra Club was aware that the US–95 Widening Project was continuing and that substantial funds were being expended. However, Defendants have not demonstrated why this Court should exercise its discretion to grant the equitable relief sought.

Sierra Club filed suit nearly two and one-half years after the Record of Decision was issued but only two and one-half months after the FWHA denied Sierra Club's second request to complete a SEIS. Laches, however, requires more than delay; it requires a lack of diligence. *City of Davis v. Coleman,* 521 F.2d 661, 667 (9th Cir.1975). In *Preservation Coalition,* the court refused to apply laches even with respect to claims known to plaintiffs for eight years. 667 F.2d at 854. The Ninth Circuit has refused to require that laches be applied in cases where the plaintiff has appropriately communicated his objections to the agency before filing suit and where compliance with NEPA could still result in environmental benefit. *See Coalition for Canyon Preservation,* 632 F.2d 774. Similarly, in a recent case in which the Ninth Circuit considered the applicability of laches to bar an environmental claim, the court refused to apply the laches defense where "it cannot be said that the harm [plaintiff] fears ... has become irreversible, or that the relief it seeks, an injunction, is impracticable." *Neighbors of Cuddy Mountain,* 137 F.3d at 1382.

Defendants rely heavily on the holding in *Apache Survival Coalition v. United States,* where the Ninth Circuit affirmed the use of laches to bar a tribe's efforts to halt construction of telescopes on an Arizona mountain as part of an international astrophysical observation project. *See* 21 F.3d at 907–912. In *Apache,* the Ninth Circuit noted that the tribe's delay was inexcusable, in part because the tribe had ignored the agency's invitation to participate in the process by providing comment

or voicing any concerns. *Id.* at 907. In addition, the court noted that prejudice is measured by "what Congress defines as prejudice" and that here, the harm the tribe sought to prevent was complete and irreversible—or reversible only at undue cost to the relevant project. *Id.* at 912 (quoting *Coalition for Canyon Preservation,* 632 F.2d at 780).

Defendants reliance on *Apache* is misplaced as the present case is easily distinguishable. Here, Sierra Club has been involved in the project throughout all stages and, unlike the tribe in *Apache,* has taken advantage of every opportunity to provide comment and voice its concerns about the project. Sierra Club representatives were involved by attending one of the public meetings, submitting comment letters on the draft and final EIS, and requesting a supplemental EIS on two occasions before filing suit. Further, the harm Sierra Club seeks to prevent is allegedly related to the widening phase of the project, which has not taken place. Both of the studies commissioned by Sierra Club indicate that compliance with NEPA at this stage could still result in substantial environmental benefit.

### 1. Diligence

■ Defendants have failed to show a lack of diligence by Sierra Club. In *Preservation Coalition,* the court set forth three factors to consider in determining whether a plaintiff in a suit against a federal agency has been diligent in bringing the action. 667 F.2d at 854. Diligence depends on: (1) whether the party attempted to communicate its position to the agency before filing suit, (2) the nature of the agency response, and (3) the extent of actions, such as preparatory construction, that tend to motivate citizens to investigate legal bases for challenging an agency action.

*Id.* These factors weigh in favor of Sierra Club, which appears to have expressed its concerns to Defendants throughout the process and pursued legal action only after the agency rejected its requests to further study the US–95 Widening Project's impact, despite the fact that Sierra Club provided Defendants with specific evidence supporting the basis for Sierra Club's concerns about the potential health risks involved. As to the third factor, Sierra Club claims that its concerns arise primarily from the ten-lane widening phase, which has not commenced. All three factors therefore point towards Sierra Club's diligence.

Moreover, a finding of diligence is consistent with the application of the special laches standard required in environmental litigation. As the court in *Preservation Coalition* explained, the reason for this special standard is that citizens have a right to assume that federal officials will comply with applicable law and to rely on that assumption. 667 F.2d at 854. In *Friends of the Clearwater v. Dombeck,* the Ninth Circuit reiterated that it is the government, rather than environmental plaintiff groups, who have a "continuing duty to gather and evaluate new information relevant to the environmental impact of its actions." 222 F.3d 552, 559 (9th Cir.2000) (quoting *City of Davis,* 521 F.2d at 667). In *City of Davis,* the court refused to apply laches to bar a NEPA suit challenging a substantially completed freeway project because "[i]t is up to the agency, not the public, to ensure compliance with NEPA in the first instance." 521 F.2d at 678.

Unlike cases where plaintiffs sat on their rights, Sierra Club's delay in filing suit was caused by Sierra Club's efforts to gather the necessary information to effectively pursue legislative and administrative relief. Sierra Club sought administrative

relief by making the two requests for a SEIS, as discussed above. The delay between the first and second requests appears to have been caused, at least in part, by commissioning the two environmental studies. The Ninth Circuit has found lesser efforts to be evidence of diligence. *Coalition for Canyon Preservation*, 632 F.2d at 780 (considering plaintiff's letter-writing and petition campaigns to be evidence of diligence).

## 2. Prejudice

■ The Ninth Circuit has previously stated that "[a]ny agency action must be evaluated not only in terms of the cost[s] ... but also, in the cost of unnecessary environmental harm." *Coalition for Canyon Preservation*, 632 F.2d at 780 (quoting *Ecology Ctr. of La., Inc. v. Coleman*, 515 F.2d 860, 868 (5th Cir.1975)). In addition, the Ninth Circuit has previously stated that in the context of NEPA cases, the prejudice to the defendant lies not merely in its actual expenditures or even in its claimed detriment, but rather in what Congress defines as prejudice. *Id.* Although courts have on occasion considered the amount of money spent and how far a project has progressed in determining whether a defendant has been prejudiced, such consideration has been in the context of evaluating whether the relief sought is still practicable. *Neighbors of Cuddy Mountain*, 137 F.3d at 1382. A court must consider whether the harm which plaintiff seeks to prevent has occurred and is irreversible. *Neighbors of Cuddy Mountain*, 137 F.3d at 1382. In *Coalition for Canyon Preservation*, the court held that the defendants failed to satisfy the prejudice prong because they failed to show that "there [would] not be substantial environmental benefit" if the NEPA claim was allowed. 632 F.2d at 781.

In the present case, the harm which Sierra Club seeks to prevent is not complete. In addition, there remains the potential for preventing or mitigating the health risks which could result from the US–95 Widening Project. As Sierra Club points out, the lanes have not yet been built and therefore, a SEIS would inform all concerned of the potential health risks associated with the project. Further, NEPA compliance could prompt reconsideration of the project, prompt changes in the design, or strengthen support for alternative transportation solutions—such as mass transit or high occupancy lanes. Finally, even if the design of the project remains unchanged, a SEIS could still lead to the addition of air quality monitoring and mitigation measures to reduce the health-related impact of the project.

The prejudice claimed by Defendants is insufficient to warrant applying laches. Defendants do not address environmental harm in its effort to demonstrate prejudice. Defendants only claim that at the time the suit was filed, the US–95 Widening Project was 16% complete, that millions of dollars had been expended, and that many people had been displaced from their homes. However, even substantial completion of a project has been found "insufficient to bar suit" when there is still a public interest to be served by requiring compliance with the law. *Coalition for Canyon Preservation*, 632 F.2d at 781.

The administrative record has not yet been produced and the parties have not yet had the opportunity to fully address Sierra Club's entitlement to injunction and declaratory relief on the merits. Based upon the foregoing, however, it is clear to the Court that summary judgment premised on Defendants' laches argument is inappropriate and that such relief must be denied.

## C. Production of the Administrative Record and Discovery

■ "To establish a right of relief under [the judicial review section of the

Administrative Procedure Act ('APA')], a claimant must satisfy two requirements: (1) that it has been affected by 'agency action' as defined in § 551(13); and (2) that it has been 'adversely affected or aggrieved' by that action 'within the meaning of a relevant statute.'" *Ecology Ctr., Inc. v. U.S. Forest Serv.,* 192 F.3d 922, 924 n. 5 (9th Cir.1999). Under the APA, this Court may review "final agency action." 5 U.S.C. § 704. *Bennett v. Spear,* 520 U.S. 154, 177, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). In NEPA litigation, the final agency action that makes an agency's compliance subject to judicial review is the issuance of a Record of Decision ("ROD"). *Oregon Natural Res. Council v. Harrell,* 52 F.3d 1499, 1504 (9th Cir.1995).

▮▮▮▮ Judicial review of the final agency action is generally limited to a review of the administrative record. *Friends of the Clearwater,* 222 F.3d at 560. Courts have applied this limitation to review agency action under NEPA. *Id.* However, a court conducting a judicial review may consider evidence outside of the administrative record in limited circumstances. *See Southwest Ctr. for Biological Diversity v. United States Forest Serv.,* 100 F.3d 1443, 1450 (9th Cir.1996) (citing sources) (carving out exceptions to the rule limiting judicial review to a review of the administrative record). In NEPA cases, discovery and consideration of evidence outside of the administrative record is permissible in certain circumstances. *Nat'l Audubon Soc'y v. United States Forest Serv.,* 46 F.3d 1437, 1447 (9th Cir.1993) (citations omitted). One such instance would be when a plaintiff in a NEPA case alleges "that an EIS has neglected to mention serious environmental consequences, failed adequately to discuss some reasonable alternative, or otherwise swept stubborn problems or serious criticism ... under the rug." *Animal Defense Council v. Hodel,* 840 F.2d 1432, 1436 (9th Cir.1988), *amended* 867 F.2d 1244 (9th Cir.1989)

(quoting *County of Suffolk v. Sec'y of the Interior,* 562 F.2d 1368, 1384–85 (2d Cir. 1977) (internal quotations and citations omitted)). The court in *County of Suffolk* explained that considering extrinsic evidence under those instances is appropriate because such circumstances "raise issues sufficiently important to permit the introduction of new evidence in the district court, including expert testimony with respect to technical matters." 562 F.2d at 1385.

▮▮▮ Consideration of evidence outside the administrative record may also be appropriate to allow the court to perform "a substantial inquiry, i.e., a thorough, probing, in-depth review" of the administrative agency's decision. *Asarco, Inc. v. U.S. Envtl. Prot. Agency,* 616 F.2d 1153, 1158 (9th Cir.1980) (internal quotations and citations omitted). In *Asarco,* the Ninth Circuit noted that:

> [i]t will often be impossible ... for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not. The court cannot adequately discharge its duty to engage in a "substantial inquiry" if it is required to take the agency's word that it considered all relevant matters.

*Id.* at 1160.

▮▮▮ The need for discovery also differs based on the nature of the review. Courts may review an agency's failure to act. 5 U.S.C. § 551(13); *see also Ecology Ctr.,* 192 F.3d at 926. In cases where "a court considers a claim that an agency has failed to act in violation of a legal obligation, review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record." *Friends of the Clearwater,* 222 F.3d at 560.

An action to compel the preparation of a SEIS is not a challenge to a final agency decision but rather, an action under § 706(1) of the APA, which requires a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *Oregon Natural Res. Council Action v. United States Forest Serv.*, 59 F.Supp.2d 1085, 1095 (W.D.Wash. 1999), *quoted in Friends of the Clearwater*, 222 F.3d at 560. A decision not to prepare a SEIS is entitled to deference and cannot be set aside unless it was arbitrary and capricious. *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 377–78, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989). To prevail on a claim that an agency failed to prepare a SEIS, the proponent must prove that "defendants have refused to prepare a SEIS despite a clear legal duty to do so." *Id.; see also ONRC Action v. Bureau of Land Mgmt.*, 150 F.3d 1132, 1137 (9th Cir.1998). An agency is required to prepare a SEIS when "[t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c).

Sierra Club seeks an order compelling Defendants to respond to Sierra Club's Discovery Requests, submitted on September 9, 2002. Among other documents, Sierra Club seeks to compel the production of the administrative record. Since this Court has resolved the laches issue, there is no obstacle to the production of the administrative record. However, there remains a question as to whether evidence outside of the administrative record may be considered.

Defendants claim that evidence outside of the administrative record may be considered only if Sierra Club is able to demonstrate that one of the exceptions applies.[4] Sierra Club agrees that the suit is, in part, an action for judicial review of an administrative agency. Furthermore, Sierra Club concedes that the judicial review of the final action is limited to the administrative record. However, Sierra Club claims that additional discovery is necessary because the lawsuit also challenges Defendants' failure to act. Specifically, Sierra Club claims that Defendants failed to "take additional actions to evaluate and mitigate the public health risk attributable to toxic emissions from the project, as required by law" and that the requested discovery is necessary to fairly adjudicate this issue. Further, Sierra Club claims that it is also entitled to conduct discovery because in preparing the EIS, Defendants failed to address serious environmental consequences and consider reasonable alternatives.

Sierra Club points to substantial legal authority in favor of allowing discovery under the present circumstances. *See e.g., Nat'l Audubon Society*, 46 F.3d at 1447; *Asarco*, 616 F.2d at 1158; *Friends of the Clearwater*, 222 F.3d at 560. This Court finds that Sierra Club is entitled to discovery on its claim the EIS was deficient because the EIS failed to mention serious environmental consequences or discuss reasonable alternatives. *Nat'l Audubon Society*, 46 F.3d at 1447.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion to Convert Defendants' FRCP 12(b)(6) Motion (Docs. # 19 & 20) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Converted Motion for Summary Judgment (Doc. # 11) is DENIED.

---

**4.** Defendants reference the Ninth Circuit's ruling in *Southwest Ctr. for Biological Diversity*, 100 F.3d at 1450, which carved out four exceptions to the rule prohibiting discovery in an APA review.

IT IS FURTHER ORDERED that Defendants' Motion to Stay Discovery (Doc. # 22) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Compel the Filing of the Administrative Record (Docs. # 19 and # 20) is GRANTED and that Defendants shall file the Administrative Record with the Clerk of Court on or before April 15, 2003.

IT IS FURTHER ORDERED that Plaintiff and Defendant shall file their Cross Motions for Summary Judgment on or before May 14, 2003, and shall file Cross Responses to the Cross Motions for Summary Judgment on or before June 5, 2003. Cross Replies shall be filed on or before June 19, 2003.

IT IS FURTHER ORDERED that Plaintiff's Motion to Compel Defendants to Respond to Plaintiff's First Set of Requests for Production of Documents Nos. 1–12 (Doc. # 25) is GRANTED and that said documents shall be produced on or before April 15, 2003. In this regard, to the extent the documents requested are already contained within the Administrative Record which has been otherwise produced in accord with this Order, said documents need not be produced a second time.