**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CSX TRANSPORTATION, INCORPORATED;
NICHOLAS, FAYETTE AND GREENBRIER
RAILROAD COMPANY,
Plaintiffs-Appellants,

v.

THE BOARD OF PUBLIC WORKS OF THE
STATE OF WEST VIRGINIA; GASTON
CAPERTON, III, Governor; LARRIE
BAILEY, State Treasurer; GLEN B.
GAINER, III, State Auditor; DARRELL V.
MCGRAW, JR., Attorney General; GUS

No. 97-1296

DOUGLASS, Commissioner of
Agriculture; HANK MAROCKIE, State
Superintendent of Schools,
Defendants-Appellees,

UNITED STATES OF AMERICA,
Intervenor.

ASSOCIATION OF AMERICAN RAILROADS;
AMERICAN SHORTLINE RAILROAD
ASSOCIATION; REGIONAL RAILROADS OF
AMERICA; RAILWAY PROGRESS INSTITUTE,
Amici Curiae.

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief Disrict Judge.
(CA-96-1905-2)

Argued: October 29, 1997

Decided: March 10, 1998

Before MURNAGHAN, NIEMEYER, and HAMILTON,
Circuit Judges.

_____

Reversed and remanded by published opinion. Judge Murnaghan
wrote the opinion, in which Judge Niemeyer and Hamilton joined.

_____

**COUNSEL**

**ARGUED:** James W. McBride, BAKER, DONELSON, BEARMAN
& CALDWELL, Washington, D.C., for Appellants. Stephanie Robin
Marcus, Appellate Staff, Civil Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor.
Katherine A. Schultz, Senior Deputy Attorney General, OFFICE OF
THE ATTORNEY GENERAL, Charleston, West Virginia, for Appel-
lees. **ON BRIEF:** Anne M. Stolee, BAKER, DONELSON, BEAR-
MAN & CALDWELL, Washington, D.C., for Appellants. Frank W.
Hunger, Assistant Attorney General, Rebecca Aline Betts, United
States Attorney, Mark B. Stern, Appellate Staff, Civil Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Intervenor. Darrell V. McGraw, Jr., Attorney General,
Stephanie M. Sisson, Assistant Attorney General, OFFICE OF THE
ATTORNEY GENERAL, Charleston, West Virginia, for Appellees.
Kenneth P. Kolson, ASSOCIATION OF AMERICAN RAILROADS,
Washington, D.C.; Betty J. Christian, Shannen W. Coffin, STEPTOE
& JOHNSON, L.L.P., Washington, D.C., for Amicus Curiae Associa-
tion of American Railroads. Richard A. Malm, DICKINSON,
MACKAMAN, TYLER & HAGEN, P.C., Des Moines, Iowa, for
Amici Curiae American Short Line Railroad Association, et al.

_____

**OPINION**

MURNAGHAN, Circuit Judge:

Two railroads alleged that the assessment, levying and collection
of certain West Virginia taxes violated the Railroad Revitalization

2

and Regulatory Reform Act of 1976. Finding that the Act's purported abrogation of a state's Eleventh Amendment sovereign immunity was invalid under Seminole Tribe v. Florida, 116 S. Ct. 1114 (1996), and that Ex parte Young, 209 U.S. 123 (1908), relief was unavailable, the district court dismissed the case for lack of subject matter jurisdiction. We reverse the dismissal of the Ex parte Young claim. Because an injunction against the future collection of illegal taxes could provide full relief to the plaintiffs, we do not resolve the question whether the abrogation of sovereign immunity is valid or invalid.

I.

CSX Transportation, Inc., and Nicholas, Fayette & Greenbrier Railroad Co. ("Railroads") brought this action against the Board of Public Works of the State of West Virginia ("Board") and its members to challenge ad valorem taxes imposed for the 1996 tax year. The Railroads' property was assessed on December 31, 1994. On September 13, 1995, the tentative notices of the assessments were issued to the Railroads. The Board met in December of 1995 to finalize the assessments, and when the Railroads failed to protest, the assessments became final in January of 1996.

The Railroads paid one half of their assessed taxes on August 30, 1996, in accordance with West Virginia law. However, in January of 1997, the West Virginia Department of Tax and Revenue released data concerning the level of assessment of other commercial and industrial taxpayers in the state for the 1996 tax year. Based on this data, the Railroads concluded that their assessments violated section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 ("4-R Act"), Pub. L. No. 94-210, 90 Stat. 54 (1976), now codified at 49 U.S.C. § 11501.[1]

_____

[1] Section 306 of the 4-R Act has twice been recodified, but neither recodification was intended to make any substantive change to that section. See Clinchfield R.R. Co. v. Lynch, 700 F.2d 126, 128 n.1 (4th Cir. 1983) (citing H.R. Rep. No. 1395, 95th Cong., 2d Sess. 1 (1978), reprinted in 1978 U.S.C.C.A.N. 3009, 3009); H.R. Conf. Rep. No. 422, 104th Cong., 1st Sess. 193 (1995), reprinted in 1995 U.S.C.C.A.N. 850, 878. Because both parties in their briefs and this Circuit in prior cases have done so, we will hereinafter refer to 49 U.S.C.§ 11501 as "section 306 of the 4-R Act."

3

The Railroads filed a motion for a preliminary injunction seeking to enjoin the Board and its members from collecting the remaining taxes assessed against them. The Railroads alleged that the Board had assessed their property at a ratio of assessed value to true market value more than five percent greater than the ratio of assessed value to true market value at which other commercial and industrial property was assessed for the 1996 tax year, in violation of section 306(1)(a) of the 4-R Act, 49 U.S.C. § 11501(b)(1) & (c).[2] The Railroads further alleged that the Board and its members were attempting to collect tax payments from the Railroads in violation of section 306(1)(b), 49 U.S.C. § 11501(b)(2). By Order of February 25, 1997, the district court denied the motion for a preliminary injunction.

_____

[2] The statute provides, in pertinent part:

> (b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:
>
> (1) Assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.
>
> (2) Levy or collect a tax on an assessment that may not be made under paragraph (1) of this subsection.
>
> (3) Levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.
>
> (4) Impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Board under this part.
>
> (c) Notwithstanding section 1341 of title 28 and without regard to the amount in controversy or citizenship of the parties, a district court of the United States has jurisdiction, concurrent with other jurisdiction of courts of the United States and the States, to prevent a violation of subsection (b) of this section.

49 U.S.C. § 11501.

In that Order, the district court found that the purported abrogation of Eleventh Amendment sovereign immunity found in section 306 was invalid, based on the Supreme Court's recent decision in Seminole Tribe v. Florida. The court also found that it could not enjoin the individual members of the Board under Ex parte Young because the relief requested by the Railroads was retrospective. The court therefore dismissed the case for lack of jurisdiction.

The Railroads then made their second one-half payment of assessed taxes on February 28, 1997, but they unilaterally deducted from that payment the amount they alleged was discriminatory over-taxation. Now the Railroads appeal from the dismissal of their claims.

II.

The sovereign immunity embodied in the Eleventh Amendment protects an unconsenting state against suit brought by private parties in federal court. See Seminole Tribe v. Florida , 116 S. Ct. 1114, 1122 (1996). The federal government may abrogate that immunity from suit, however, by a clear expression of legislative intent to abrogate enacted pursuant to a valid exercise of power. See id. at 1123-24. It is uncontested that section 306 of the 4-R Act clearly intended to abrogate state sovereign immunity. However, after Seminole Tribe, the only power which the Supreme Court has held may be used to abrogate a state's sovereign immunity is Section Five of the Four-teenth Amendment. See id. at 1125. The abrogation in section 306 of the 4-R Act is only effective, therefore, if it is a valid exercise of that power.

It is contested whether, in addition to exercising its Commerce Clause power, Congress intended to or could have passed section 306 of the 4-R Act pursuant to its Fourteenth Amendment enforcement power. Ignoring the wealth of precedent establishing that Congress's failure to mention that it acted pursuant to Section Five of the Four-teenth Amendment is not dispositive, see, e.g. , EEOC v. Wyoming, 460 U.S. 226, 243 n.18 (1983); Schlossberg v. Maryland (In re Cre-ative Goldsmiths of Washington, D.C., Inc.), 119 F.3d 1140, 1147 (4th Cir. 1997) ("Because there is no evidence that Congress either passed the Bankruptcy Code under § 5 of the Fourteenth Amendment or sought to preserve the core values specifically enumerated in that

5

amendment, we hold that Congress' effort to abrogate the states' Eleventh Amendment immunity . . . is unconstitutional and ineffective."); Crawford v. Davis, 109 F.3d 1281, 1283 (8th Cir. 1997), the district court held that because the major purpose of the 4-R Act in general was to protect interstate commerce, section 306 could not be supported by the Fourteenth Amendment enforcement power.

Although remedying discriminatory taxation, in general, is an equal protection concern, the power granted to Congress by Section Five of the Fourteenth Amendment is limited to the promulgation of remedial or preventive legislation that enforces the provisions of the Fourteenth Amendment and does not extend to substantive legislation that defines the Amendment's restrictions on the states. [3] See City of Boerne v. Flores, 117 S. Ct. 2157, 2164 (1997). We need not determine whether section 306 is remedial equal protection legislation or substantive legislation, however, because even assuming that section 306 cannot be justified as an exercise of Section Five of the Fourteenth Amendment and therefore its purported abrogation of state sovereign immunity is invalid, Ex parte Young authorizes an injunction, without eliminating sovereign immunity, that will provide the railroads with complete relief. By correcting the district court's erroneous Ex parte Young analysis, we make resolution of the Section Five issue unnecessary.[4] See Ashe v. Styles, 67 F.3d 46, 51 (4th Cir. 1995) ("[A]s is our general practice, we hesitate to adjudicate unde-

_____

[3] Ironically, the Railroads, in a brief filed two months before the City of Boerne decision, asserted that "Congress may statutorily define federal equal protection rights and prescribe remedies to enforce them, irrespective of how the courts may have interpreted them. Section 306 is precisely such a statute." Brief of Appellants at 23. The Railroads could not have known then in April that the Supreme Court would rule this practice unconstitutional in June. If we accept the Railroads' assertion that section 306 is substantive rather than remedial, we must find that the statute cannot be a valid exercise of Congress's Equal Protection Clause enforcement powers.

[4] We mention the Fourteenth Amendment Section Five issue nevertheless so as not to run the risk of our total silence being construed as a conclusion that no issue exists or as implicit acceptance of the district court's analysis. The district court raised a controversial issue, which in some appropriate future case will need to be resolved.

6

cided constitutional issues unnecessarily."), cert. denied, 116 S. Ct. 1051 (1996).

III.

An injunction under the Ex parte Young doctrine may provide the Railroads with complete relief regardless whether the state is immune from suit under the Eleventh Amendment. The theory of Ex parte Young is that because an unconstitutional statute is void, it cannot cloak an official in the state's sovereign immunity. Although the reasoning of Ex parte Young has never been extended to claims for retrospective relief, federal courts may grant prospective injunctive relief against state officials to prevent ongoing violations of federal law. See Green v. Mansour, 474 U.S. 64, 68 (1985) (citing Ex parte Young, 209 U.S. 123, 159-60 (1908)); Gray v. Laws, 51 F.3d 426, 430 n.1 (4th Cir. 1995). An injunction against the future collection of the illegal taxes, even those that already have been assessed, is prospective, and therefore available under the Ex parte Young doctrine.

A.

The district court dismissed the Railroads' claims for Ex parte Young relief, believing that it was without power to enjoin the levying or collection of a tax which already had been assessed. The district court thought that such an injunction would be retrospective, and thus not permitted under Ex parte Young, because it would require a judgment that the assessment was invalid. See CSX Transportation, Inc. v. Board of Public Works, No. 2:96-1905, slip op. at 17 (S.D. W.Va. Feb. 25, 1997). The court also concluded that because the injunction amounted to "some sort of a refund of the amount collected" or credit against future tax payments "'measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials'" it would be barred by the Eleventh Amendment. See id. at 17-18 (quoting Edelman v. Jordan , 415 U.S. 651, 668 (1974)). We review the district court's legal determination whether Ex parte Young relief is available de novo.

1.

The district court erred when it concluded that an injunction barring the future collection of taxes was retrospective, and thus

7

improper under Ex parte Young, once the amount of the taxes had been assessed. First, the district court hesitated to grant relief to the Railroads because to do so "would impact the State treasury in some form, whether the Railroads were to be given a cash refund for over-paying the first half taxes or a credit against the amount of taxes due for the second half." Id. at 16. But the Fourth Circuit has explained that Ex parte Young relief may still be available despite its impact on the state treasury:

> The Supreme Court has also repeatedly recognized that "re-lief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury."

Virginia Hosp. Ass'n v. Baliles, 868 F.2d 653, 662 (4th Cir. 1989) (quoting Papasan v. Allain, 478 U.S. 265, 278 (1986)), aff'd sub nom. Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498 (1990).[5]

Second, the court believed that it could not enjoin the collection or the levying of the future taxes because such actions "are largely min-isterial in nature," and the requested injunction would effectively "h[o]ld invalid and change[ ]" the past assessment, thereby making it a retrospective order. CSX Transportation, Inc. , No. 2:96-1905, slip op. at 17. However, in Ex parte Young itself the Supreme Court explained that it had the power to enjoin ministerial actions of state officials. See 209 U.S. at 158. Furthermore, our decision in Coakley v. Welch, 877 F.2d 304 (4th Cir. 1989), illustrates that a future injunc-tion is not made retrospective merely because it recognizes that an ongoing violation of law is the result of a past wrong.

_____

[5] Furthermore, the district court misunderstood the form of relief requested here: the Railroads require neither a cash refund nor a credit against past taxes paid. The Railroads do not question their liability for the past taxes they have paid. They seek an injunction barring the future collection of the part of taxes illegally assessed, which portion they have withheld and refused to pay, although they have paid the balance. See infra at 10-12.

8

Coakley alleged that a state official had violated Coakley's due process rights by firing him without good cause, and sought an injunction ordering his reinstatement. See id. at 305. The court "recognize[d] that from one point of view" the plaintiff had only alleged a past violation of his rights and no ongoing violation upon which to base Ex parte Young relief. Id. at 307 n.2. However, the Fourth Circuit found the view that was more consistent with Supreme Court and Fourth Circuit precedent was that the past violation"continue[d] to harm him by preventing him from obtaining the benefits of . . . employment." Id. An injunction to correct this ongoing harm was permissible despite its implication that his past firing had been improper. See id. at 306-07.

In support of the district court's opinion, the Board insists that an injunction against the future collection of taxes is retrospective if the amount of taxes has already been determined. The Board argues that the Railroads' tax liability accrued on the valuation date for the property taxes in question, December 31, 1994. Therefore, it asserts, "it is clear that the relief sought by the Railroads is not prospective because the liability attached long ago." Brief of Appellees at 32. The argument is without merit.

The Board in effect argues that an injunction against the future collection of illegal taxes is retrospective and unavailable merely because the state has already decided how much tax to collect, even though the money is still safely in the taxpayer's pocket. If we were to accept this argument, no injunction could issue pursuant to Ex parte Young if the action to be enjoined had already been decided upon by a state official. But, of course, plaintiffs have no way to know that they must sue to enjoin an official's action until after the official has decided to take that action.[6]

Misconstruing the Supreme Court's holding in Milliken v. Bradley, 433 U.S. 267 (1977), the Board asserts that "the linchpin for determining whether recovery against State officers is appropriate is a

_____

[6] It is notable that the tentative notice of assessment of the amount of taxes due was first issued to the Railroads on September 13, 1995 -- nine months too late for a prospective injunction, according to the Board's argument.

9

determination of whether liability has accrued. Here, liability has accrued so no recovery can be had against the State or its officials." Brief of Appellees at 36. In Milliken the Supreme Court noted that the plaintiff's claim did not involve a "raid on the state treasury for an accrued monetary liability." Milliken, 433 U.S. at 290 n.22. The "accrued monetary liability" to which the Supreme Court was referring was one accrued against the state, that is, money the state owed the plaintiff. Milliken explained that a plaintiff could not use an injunction to force the state to pay him money it owed him. Here, the Board is arguing that because a monetary liability already has accrued against the Railroads, that is, because the state claims that the Railroads owe it money, Milliken bars relief. The Railroads do not overstate when they claim that the Board's "nonsensical argument illustrates the paucity of actual case law supporting the district court's ruling that enjoining the future collection of tax payments would actually be retroactive relief." Reply Brief of Appellants at 15.

2.

The district court further erred in holding that the injunction was retrospective because it sought a refund or credit for "a monetary loss." CSX Transportation, Inc., No. 2:96-1905, slip op. at 18. The Railroads seek nothing of the kind. The Railroads have not lost any money: the money allegedly illegally assessed is still safely in their pockets.

The district court claimed that the relief sought by the Railroads was "directly analogous to a portion of the prohibited relief sought in Edelman which was `measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials.'" CSX Transportation, Inc., No. 2:96-1905, slip op. at 18 (quoting Edelman, 415 U.S. at 668). However, the award disallowed in Edelman which was "measured in terms of a monetary loss," was an award of equitable restitution, "in practical effect indistinguishable in many aspects from an award of damages against the State." Edelman, 415 U.S. at 668. In the instant case, no award of any money need be made from the state treasury. Instead, money which state officials would otherwise collect from the Railroads, in violation of federal law, will be protected from collection.

10

It is of no import that the state officials have already decided how much money they want illegally to collect, nor that they have already decided how they want to spend the money they intend in the future illegally to collect, nor that the state will have to expend its own funds to make up for the funds it was not allowed illegally to collect. The point is that the future collection is illegal. **7** Section 306 not only prohibits discriminatory tax assessments, but specifically prohibits the collection of any tax based upon such an assessment. See 49 U.S.C. § 11501(b)(2). Injunctive relief is available under Ex parte Young to prevent such a future violation of federal law.

Echoing the district court's mistake, the Board argues that because the Railroads have already paid half of the taxes assessed, they may not recoup the allegedly discriminatory overassessment from their first one-half payment because such recoupment would come out of the state treasury and be retrospective relief. The Board's mistake is in its premise: the Railroads need not seek to "recoup" anything here. They need only to enjoin the future collection of the amount of taxes that was assessed illegally to be provided full relief.

An example will illustrate the unnecessary complication required to create a retrospective injunction in this case. Assume that the amount of taxes assessed was $10.00, but the lawful amount was only $8.00, and the Railroads had already paid one half of the assessment, $5.00. We could enjoin the collection in the future of the $2.00 of unlawful discriminatory over-taxation, and permit only the collection of the remaining $3.00. That would only be prospective relief. Were we to fashion an injunction ordering the Railroads to pay only an additional $4.00 as a second half-payment and also ordering the state to refund $1.00 from the first half-payment, that refund would be retrospective relief.**8** But why we would order such an unnecessarily

---

**7** We have assumed that the Railroads would prevail on the merits for the limited purpose of evaluating the district court's dismissal for lack of subject matter jurisdiction. Upon remand, the Railroads will still have to prove that the amount of taxes they have withheld was assessed in violation of section 306 of the 4-R Act. We make no judgment regarding the merits of this contention.

**8** The injunction prohibiting the state from collecting more than the lawful $4.00 of the second one-half payment would be prospective, however. Even according to its own misunderstanding of the required relief, therefore, the district court was incorrect to dismiss the Railroads' action in its entirety.

11

complex and invalid injunction when a simple, valid remedy is available is difficult to understand.

B.

Regardless of when the state defendants completed the tax assessment, the action that the Railroads seek to enjoin-- the collection of illegal taxes -- has not yet occurred. The injunction that the Railroads seek is thus precisely the type of relief contemplated by Ex parte Young. The district court's order dismissing the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is therefore reversed, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED

12