**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 22-1465**

———————

INDUSTRIAL SERVICES GROUP, INC., d/b/a Universal Blastco,

Plaintiff - Appellee,

v.

JOSH DOBSON, in his official capacity as North Carolina Commissioner of Labor; KEVIN BEAUREGARD, in his official capacity as Director of the Occupational Safety and Health Division of the North Carolina Department of Labor,

Defendants - Appellants.

———————

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Martin K. Reidinger, Chief District Judge.  (1:21-cv-00090-MR-WCM)

———————

Argued:  January 27, 2023                          Decided:  May 16, 2023

———————

Before GREGORY, Chief Judge, WILKINSON, and HEYTENS, Circuit Judges.

———————

Affirmed by published opinion.  Chief Judge Gregory wrote the opinion, in which Judge Wilkinson and Judge Heytens joined.

———————

**ARGUED:**  Stacey Alayne Phipps, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants.  Travis Wayne Vance, FISHER & PHILLIPS, LLP, Charlotte, North Carolina, for Appellee.  **ON BRIEF:**  Joshua H. Stein, Attorney General, Victoria L. Voight, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants.  David I. Klass, FISHER & PHILLIPS LLP, Charlotte, North Carolina, for Appellee.

———————

GREGORY, Chief Judge:

The North Carolina Occupational Safety and Health Hazard Association ("NC OSHA") issued several itemized citations to Industrial Services Group ("ISG") following the on-site deaths of two ISG employees. Soon thereafter, ISG filed for declaratory and injunctive relief against two North Carolina state officials, Josh Dobson, the North Carolina Commissioner of Labor and acting Chief Administrative Officer for the North Carolina Department of Labor ("NCDOL"), and Kevin Beauregard, the Director of NCDOL's Occupational Safety and Health Division, (collectively "Defendants"), in their official capacities. ISG alleged that the issued citations were unlawful because they stemmed from North Carolina's occupational health and safety plan, which in their view violates 29 U.S.C. § 657(h) of the federal Occupational Safety and Health Act ("OSH Act"), a provision that forbids Defendants from evaluating their employees' enforcement activities based on the number of penalties they have assessed and citations they have issued.

The district court denied Defendants' motions to dismiss and for judgment on pleadings, holding, *inter alia*, that they were not entitled to Eleventh Amendment sovereign immunity because ISG's claims satisfied the *Ex Parte Young* exception. Through this interlocutory appeal, the parties ask us to grapple with that same issue. Defendants also raise, for the first time, two arguments questioning ISG's standing and insist that the abstention doctrine bars federal courts from hearing ISG's suit. For the reasons that follow, we affirm the district court's decision to deny Defendants Eleventh Amendment immunity and decline to exercise pendent appellate jurisdiction over Defendants' newly-raised claims.

2

I.

A.

Enacted in 1970, the OSH Act establishes a comprehensive regulatory scheme designed "to assure so far as possible . . . safe and healthful working conditions" for "every working man and woman in the Nation." 29 U.S.C. § 651(b). Along with the OSH Act, Congress created the federal Occupational Safety and Health Administration ("OSHA") to ensure the OSH Act's enforcement nationwide.

In addition to establishing federal regulations, the OSH Act "encourag[es] the States to assume the fullest responsibility for the administration and enforcement of their occupational safety and health laws," 29 U.S.C. § 651(b)(11), and to "provide[] for the development and enforcement of safety and health standards relating to one or more safety or health issues" covered by the Act. 29 U.S.C. § 667(c)(2). To assume this responsibility, the State must submit—and OSHA must approve—a "State Plan" which guarantees standards "at least as effective in providing safe and healthful employment" as those developed by the OSH Act. *Id.* A State Plan must also "provide a program for the enforcement of the State standards which is, or will be, at least as effective as that provided in the Act, and provide assurances that the State's enforcement program will continue to be at least as effective as the Federal program." 29 C.F.R. § 1902.3(d)(1).

After OSHA approves a State Plan, it will "make a continuing evaluation of the manner in which [the] State . . . is carrying out such plan." 29 C.F.R. § 667(f). If OSHA determines "that in the administration of the State plan there is a failure to comply substantially with any provision of the State plan (or any assurance contained therein)," the

3

Secretary of Labor will inform the State Agency of their withdrawal of approval, and once notice of receipt is received, the State Plan will "cease to be in effect." *Id*. And, as relevant here, in 1998, Congress amended the OSH Act to forbid the Secretary from "us[ing] the results of enforcement activities, such as the number of citations issued or penalties assessed, to evaluate employees directly involved in enforcement activities under this chapter or to impose quotas or goals with regard to the results of such activities." 29 U.S.C. § 657(h).

With that background in mind, we turn to the facts before us.

### B.

ISG—a South Carolina based corporation—is a heavy industry business, often performing fabrication, installation, repairs, and inspections of industrial equipment on behalf of its customers. The corporation, which operates under the trade name "Universal Blastco," frequently conducts its business outside the state, including in North Carolina, where the events underlying this appeal transpired.

On September 21, 2020, two ISG employees were onsite at the Evergreen Packaging Paper Mill in Canton, North Carolina conducting lamination-based work when a fire broke out. Tragically, the two ISG employees lost their lives due to carbon monoxide poisoning and blunt force trauma stemming from the fire. ISG properly reported the fatalities to the NCDOL, which initiated an inspection of the worksite. Following their inspection, on March 16, 2021, NCDOL's Occupational Safety and Health Division issued ISG three citations with thirteen overall violations: one "Willful Serious" violation, nine "Serious" violations, and three "Non-Serious" violations resulting in total penalties of $112,000.

4

Shortly thereafter, ISG filed a complaint in the United States District Court for the Western District of North Carolina against Dobson and Beauregard in their official capacities.

ISG's Complaint raised three primary claims. Counts One and Two, brought under 28 U.S.C. §§ 2201 and 2202, contended that Dobson and Beauregard could not lawfully issue these citations because they maintain a practice of employee performance evaluation in violation of § 657(h). Specifically, the Complaint asserted that Dobson, who plays a role in administering the North Carolina State Plan ("NC State Plan")[1] as the Commissioner of Labor, "has admitted that the performance of 'compliance officers'—who inspect workplaces for hazardous conditions and issue citations for alleged violations—is evaluated based on . . . 'the number of inspections opened and closed, and the number of citations issued and upheld.'" J.A. 8. Given the Commissioner's admission, the Complaint alleged that the NC State Plan "directly violates" § 657(h) and therefore "is preempted by" the federal OSH Act. *Id.*; J.A. 11.

ISG's third claim, raised under 42 U.S.C. § 1983, asserted that Defendants had violated their due process rights by "engaging in enforcement activities against ISG despite lacking the proper legal authority to do so" and "incentivizing their compliance officers to commence investigation and enforcement activities and issue citations and penalties against ISG pursuant to an official policy or practice that violates and is preempted by

---

[1] The NC State Plan received initial approval in 1973 and final approval in 1996; it "covers all private-sector employers and employees, with several notable exceptions, as well as State and local government employers and employees, within the State." *See* www.osha.gov/laws-regs/regulations/standardnumber/1952/1952.5 (last visited May 5, 2023); J.A. 10. The NC State Plan is administered by the NCDOL and the NC OSHA.

5

federal law." J.A. 26. For these reasons, ISG argued, Defendants cannot lawfully issue

citations pursuant to their illegal operation of the NC State Plan nor enforce a policy

preempted by federal law. ISG seeks, *inter alia*, six forms of declaratory relief and two

requests for injunctive relief.[2]

---

[2] Specifically, ISG's Complaint states the following prayers for declaratory and injunctive relief:

(a) A declaration that Defendants' official policy or practice of evaluating compliance officers' performance based on the number of citations issued or penalties assessed violates the OSH Act;

(b) A declaration that the official policy or practice described in subsection (a) has placed Defendants' administration of the North Carolina State Plan out of compliance with the OSH Act;

(c) A declaration that the official policy or practice described in subsection (a) has placed Defendants' administration of the North Carolina State Plan out of compliance with the stated terms of the Plan itself;

(d) A declaration that the official policy or practice described in subsection (a) is preempted by the OSH Act;

(e) A declaration that by maintaining the official policy or practice described in subsection (a), Defendants have violated ISG's substantive due process rights under the Fourteenth Amendment;

(f) A declaration that by maintaining the official policy or practice described in subsection (a), Defendants have violated ISG's procedural due process rights under the Fourteenth Amendment;

(g) A preliminary and permanent injunction prohibiting Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction from engaging in enforcement activities against ISG, including initiating or maintaining administrative proceedings;

(h) A preliminary and permanent injunction prohibiting Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction from engaging in enforcement activities against any employer that has been inspected or issued citations under the official policy or practice described in subsection (a), including issuing citations, prosecuting existing citations, or initiating or maintaining administrative proceedings.

J.A. 27.

6

Defendants moved to dismiss and for judgment on the pleadings. Relevant to this appeal, they asserted that ISG's suit is barred because ISG's claims in effect seek suit against the state agency, which is protected by Eleventh Amendment immunity. On January 7, 2022, a magistrate judge issued a Report & Recommendation ("R&R") that recommended denying both motions. In relevant part, the magistrate rejected Defendants' Eleventh Amendment argument because it determined that ISG's suit fell squarely within the parameters of the *Ex Parte Young* exception.

In parallel proceedings, ISG pursued dismissal or stay of the issued citations with the North Carolina Occupational Safety and Health Review Commission ("NC OSHRC") on August 13, 2021, arguing that Dobson lacked "the legal authority to institute and prosecute this administrative action." J.A. 700. In denying ISG's motions, the NC OSHRC Hearing Examiner concluded that § 657(h) is not an OSH Act standard that states are required to enforce and, further, that there is no statutory or regulatory support for treating the provision as a requirement under the State Plan. The Hearing Examiner also upheld several itemized citations and dismissed one. Finally, the decision left open the opportunity for either party to "raise the issue of staying these proceedings again, should a decision issue from the federal court which suggests that further consideration is appropriate." J.A. 710.

After the parties filed timely objections and responses, the district court accepted the magistrate's R&R, affirming denial of the motions. From that decision, Defendants filed this interlocutory appeal. *See Litman v. George Mason Univ.*, 186 F.3d 544, 548 (4th Cir. 1999) (demonstrating this Court's authority to hear, on interlocutory appeal, a district

7

court's order denying Eleventh Amendment immunity).  Thus, we have jurisdiction to hear Defendants' interlocutory appeal.

## II.

We review the grant or denial of a motion to dismiss de novo.  *See Benjamin v. Sparks*, 986 F.3d 332, 351 (4th Cir. 2021).  That includes "a district court's legal determination of whether *Ex Parte Young* relief is available," which is an "immediately appealable" issue.  *Franks v. Ross*, 313 F.3d 184, 192–93 (4th Cir. 2002); *Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002).  We similarly review motions for Rule 12(c) judgment on the pleadings de novo.  *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009).

## III.

Defendants challenge the district court's conclusion that ISG's suit satisfies the parameters of the *Ex Parte Young* exception, which denies Defendants Eleventh Amendment immunity protection and allows ISG's claims to proceed.  Defendants also argue—for the first time on appeal—that:  (1) ISG lacks Article III standing and (2) the abstention doctrine (without indicating which specific abstention doctrine) bars federal courts from hearing this case because it is also being actively litigated in state proceedings. In response, ISG argues that Defendants have implicitly requested this court's discretion to exercise pendent appellate jurisdiction over their newly raised issues.  ISG urges us to decline that invitation and to affirm the district court's decision denying Eleventh Amendment immunity.

We agree with ISG on both scores.  Taking each argument in turn, we first address Defendants' *Ex Parte Young* argument and hold that the district court correctly denied them Eleventh Amendment immunity.  We then explain why we decline to exercise pendent appellate jurisdiction over Defendants' standing and abstention arguments.

### A.

Turning to the most fundamental issue, we consider whether ISG's suit falls within the *Ex Parte Young* exception, thereby placing Defendants beyond the Eleventh Amendment's ambit.

### 1.

The Eleventh Amendment prohibits "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  This immunity "has been judicially interpreted to run as well to actions by a state's own citizens, by [Native American] tribes, and . . . by foreign states."  *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998) (internal citations omitted).  It not only precludes suits against states as named parties but also against state agents or officials "that are in fact actions against the state as the real party in interest."  *Id.*

In *Ex Parte Young*, the Supreme Court devised an exception to Eleventh Amendment immunity for suits brought against state officials.  *See id.*; *Ex Parte Young*, 209 U.S. 123, 160 (1908).  State officers or agents acting in violation of the Constitution are "stripped of [their] official or representative character and [are] subjected in [their] person to the consequences of [their] individual conduct."  *Id.*  Thus, this exception "allows private citizens, in proper

9

cases, to petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute." *Antrican*, 290 F.3d at 184.  To satisfy this exception, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (cleaned up); *see also Allen*, 134 F.3d at 627.  Taking ISG's Complaint at face value, we find that this suit falls well within *Ex Parte Young*'s bounds.

2.

As stated, the magistrate judge briefly determined that because ISG sued Defendants in their official capacity and the declaratory and injunctive relief sought was prospective, "as to future actions NC OSHA may take against" the company, the suit appropriately met the *Ex Parte Young* exception, and Defendants were not entitled to Eleventh Amendment immunity.  J.A. 728.  On appeal, Defendants contend that the district court erred in failing to dismiss on Eleventh Amendment immunity grounds because NCDOL, and therefore the state of North Carolina (rather than the named Defendants) is the "real, substantial party in interest," *Ford Motor Co.*, 323 U.S. at 464; and ISG's requested relief is retrospective in nature. [3]  Upon review, we reject these arguments.

At the outset, ISG's Complaint properly alleges that Defendants' supposed violation of the federal OSH Act is "ongoing" or "continuing."  Our *Ex Parte Young* inquiry "does

---

[3] Defendants also assert, and ISG does not deny, that NCDOL (and therefore North Carolina) did not waive its Eleventh Amendment immunity.  And there is no indication in the record that North Carolina and NCDOL have waived sovereign immunity.

not include an analysis of the merits of the claim." *Verizon*, 535 U.S. at 646. Instead, "[t]he requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (quoting *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 330 (4th Cir. 2001)). Stated differently, to qualify for the exception, ISG need not *prove* that Defendants' alleged employee evaluation actions are an ongoing or continuing violation of the federal OSH Act. Rather, it is sufficient that ISG's Complaint merely *alleges* the ongoing behavior. *See Verizon*, 535 U.S. at 645–46.

That is precisely what the Complaint achieves. ISG's claims focus on the NC State Plan's past and continuing violation of § 657(h), which prohibits consideration of the number of citations issued or penalties assessed, as well as the implementation of quotas or goals with regard to such, in the course of employment evaluations. ISG's Complaint also alleges Dobson's repeated admissions that NC OSHA's compliance officers' performance is based, in part, on the number of citations they issue. *See, e.g.*, J.A. 12 ("[A]dmitted, in that the number of citations issued are one of a number of factors considered when reviewing compliance officer performance."); J.A. 15 ("Complainant does admit that inspectors are reviewed as required by law annually which consider the performance of the inspector including . . . the number of inspections opened and closed, the number of citations issued and upheld."). Therefore, we conclude that ISG properly alleges an ongoing or continuing violation of federal law.

11

3.

Moreover, the relief ISG requests is prospective in nature. Without explanation, Defendants urge us to view ISG's prayers for relief as a wolf in sheep's clothing: an attempt to attain "retrospective relief in the form of rescission of its citations." Opening Br. at 22. We do not accept this notion.

ISG's two injunctive requests are quintessential examples of prospective injunctive relief not barred by Eleventh Amendment immunity. *See Ex Parte Young*, 209 U.S. at 159–60. Their injunctive claims ask to prohibit Defendants "from engaging in enforcement activities against ISG, including initiating or maintaining administrative proceedings" and "from engaging in enforcement activities against any employer that has been inspected or issued citations under the official policy or practice . . . including issuing citations, prosecuting existing citations, or initiating or maintaining administrative proceedings." J.A. 27–28. To the extent that portions of the requested injunctive relief have "retrospective" characteristics, that concern is easily addressed by our precedent.

Specifically, we look to *CSX Transp., Inc. v. Bd. of Public Works of State of West Virginia*, 138 F.3d 537 (4th Cir. 1998) for guidance. There, the district court concluded that an injunction against future tax collection from West Virginia's Board of Public Works ("Board") requested retrospective relief, and was therefore "improper under *Ex parte Young*, once the amount of the taxes had been assessed." *Id.* at 540. The district court reasoned that the plaintiffs' requested injunction would "hold invalid and change the past assessment," making it a retrospective order due to the fact that the amount to be collected had already been decided. *Id.* at 541 (cleaned up). On appeal, however, we rejected the

district court's conclusion because it would foreclose any injunction "pursuant to *Ex parte Young* if the action to be enjoined had already been decided upon by a state official." *Id.* at 542. Because plaintiffs in those circumstances "have no way to know that they must sue to enjoin an official's action until after the official has decided to take that action," we held that "[a]n injunction against the future collection of the illegal taxes, even those that already have been assessed, is prospective, and therefore available under the *Ex parte Young* doctrine." *Id.* at 541–42.

This case is on all fours with *CSX*. ISG's Complaint indicates that Defendants have issued multiple citations against the company following the on-site death of two of their employees. We do not take the tragic facts underlying these citations lightly. However, our review finds that, like the plaintiff in *CSX*, ISG seeks relief that would prohibit Defendants from any *additional* or *future* allegedly unlawful actions. That is, ISG's Complaint does not seek to expunge their past citations,[4] but rather to preclude Defendants from continuing their alleged illegal policies or practices (which ISG likely could not have discovered until after the citations were issued) that they believe are in violation of the federal OSH Act. *See Coakley v. Welch*, 877 F.3d 304, 305 (4th Cir. 1989) (affirming district court's decision denying state official Eleventh Amendment immunity where plaintiff alleged state official had violated their due process rights and sought injunctive relief ordering reinstatement to their job, based on conclusion that termination was an ongoing harm preventing the plaintiff from obtaining the benefits of employment). Even

---

[4] This course of relief, however, is actively being pursued in state proceedings. *See supra* note 3.

13

assuming that ISG's requested relief relies on Defendants' previous allegedly unlawful actions, the true "essence," *see Allen*, 134 F.3d at 628, of the relief is prospective.

In sum, ISG's prayers for relief are not retrospective, as Defendants claim, but properly prospective, and satisfy the second piece to the *Ex Parte Young* exception.

4.

Finally, Defendants insist that NCDOL, and therefore the state of North Carolina, is the true party in interest. Not so.

Courts find that "the state is the real, substantial party in interest" when the "relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963)). Here, ISG's Complaint alleges that the NC State Plan has and continues to violate the OSH Act. It also claims that Dobson and Beauregard, who in their official capacities are responsible for overseeing NCDOL's implementation of the NC State Plan and its conformity with federal law, are accountable for the unlawful employee evaluation practices. Relying on that, the Complaint does not seek action by North Carolina, but rather, by the named Defendants who are at the helm of the NC State Plan's operation. Thus, Dobson and Beauregard were properly named as such in this suit. *See D.T.M. ex rel. McCartney v. Cansler*, 382 F. App'x. 334, 338 (4th Cir. 2010) (concluding that Secretary of North Carolina's Medicaid program was not entitled to Eleventh Amendment immunity because he, in his official capacity, was the "person

14

responsible for assuring that the agency's decision compl[ies] with federal law")
(unpublished).[5]

## B.

Given that Defendants are not entitled to Eleventh Amendment Immunity, we now
address whether we should exercise pendent appellate jurisdiction over Defendants'
freshly-raised standing and abstention claims. We decline to do so.

## 1.

Our "appellate jurisdiction is limited to final orders from the district courts." *Rux
v. Republic of Sudan*, 461 F.3d 461, 474 (4th Cir. 2006). Importantly, however, the
collateral order doctrine creates an exception to that rule for claims involving Eleventh
Amendment immunity. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506
U.S. 139, 144 (1993). On the other hand, the collateral order doctrine does not provide us
with appellate jurisdiction over Defendants' standing and abstention claims. Therefore,
we must determine whether we have "pendent appellate jurisdiction, a judicially-created,
discretionary exception to the final judgment requirement," over those new arguments.
*Rux*, 461 F.3d at 475.

Intended to be "of limited and narrow application driven by considerations of need,
rather than of efficiency," this exception allows appellate courts to review issues that are
not otherwise subject to immediate appeal when such issues "are so interconnected with

---

[5] Defendants briefly cite to our recent holding in *Cunningham v. Lester*, 990 F.3d
361 (4th Cir. 2021), for further support. However, because *Cunningham* does not analyze
the *Ex Parte Young* exception—which is the integral issue before us today—it is
unnecessary to address here.

15

immediately appealable issues that they warrant concurrent review." *Id*. Pendent appellate jurisdiction is exclusively available "(1) when an issue is 'inextricably intertwined' with a question that is the proper subject of an immediate appeal; or (2) when review of a jurisdictionally insufficient issue is 'necessary to ensure meaningful review' of an immediately appealable issue." *Id.* at 475 (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35 50–51 (1995)).

"Two separate rulings are 'inextricably intertwined' if 'the same specific question will underlie both the appealable and the non-appealable order, such that resolution of the question will necessarily resolve the appeals from both orders at once.'" *Scott v. Fam. Dollar Stores, Inc.*, 733 F.3d 105, 111 (4th Cir. 2013) (quoting *Ealy v. Pinkerton Gov. Servs., Inc.*, 514 F. App'x 299, 309 (4th Cir. 2013) (per curiam, unpublished)). Moreover, "review of a pendent issue will be necessary to ensure meaningful review of an immediately appealable issue if resolution of the pendent issue is necessary, or essential in resolving the immediately appealable issue." *Ealy*, 514 F. App'x at 309 (internal quotations omitted).

Because a district court's denial of a motion to dismiss on Eleventh Amendment immunity grounds is immediately appealable, *see Metcalf & Eddy*, 506 U.S. at 147, our consideration of Defendants' standing and abstention arguments thus hinges on whether those issues are "inextricably intertwined" with or "necessary to ensure meaningful review of" the Eleventh Amendment immunity claim. *See Rux*, 461 F.3d at 476. Because we find that they are not, we cannot exercise pendent appellate jurisdiction over those claims.

16

2.

We begin with Defendants' new standing claim.  Standing is the "irreducible constitutional minimum" required to make "Cases" or "Controversies" justiciable under Article III, § 2 of the Constitution.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  It is axiomatic that standing is a threshold jurisdictional issue that must be determined before a court can consider the merits of a case.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88 (1998).  But while standing is a vital threshold issue, it is not an essential prerequisite to determining the *other* jurisdictional, immediately appealable claim in this case:  Eleventh Amendment immunity.

The Supreme Court has long recognized that passage of the Eleventh Amendment highlights "the fundamental principle of sovereign immunity [which] limits the grant of judicial authority in Art. III."  *Pennhurst*, 465 U.S. at 97.  Absent unequivocal expression of consent from a state, this immunity bars citizens from bringing suits against it, *id.* at 99, and also its officials if, upon further analysis, the suits truly seek to establish "the state as the real party in interest," *Allen*, 134 F.3d at 627.  Thus, like standing, Eleventh Amendment immunity presents a jurisdictional question that may bar a suit from advancing to the merits. *See Edelman v. Jordan*, 415 U.S. 651, 678 (1974) (holding that "it has been well settled . . . that the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar."); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (holding that Eleventh Amendment immunity is "an immunity from suit rather than a mere defense to liability.").

With that in mind, Defendants' standing assertion is not so "inextricably intertwined" with their Eleventh Amendment immunity claim because resolution of the

17

former does not underlie or necessarily resolve the latter.  The immediately appealable Eleventh Amendment immunity issue asks us to determine whether this suit falls within the parameters of the *Ex Parte Young* exception, thereby barring Defendants from immunity.  As discussed above, that analysis required our inquiry into the *form* of the relief requested.  That analysis in turn required us to determine whether the relief sought was prospective or retrospective, as well as whether ISG sufficiently alleged that Defendants' unlawful conduct was ongoing.

Defendants' pendent standing argument, on the other hand, would require us to undertake an entirely irrelevant inquiry.  For instance, under the standing doctrine's "injury in fact" prong, this Court would examine whether ISG suffered a "concrete and particularized" and "actual and imminent" injury, *Lujan*, 504 U.S. at 560, by Defendants. This prong alone would require a fact-intensive analysis that bears on considerations not relevant to the Eleventh Amendment immunity claim, such as whether the violations, fines, and penalties Defendants issued to ISG caused the company harm.  *See Sierra Nat. Ins. Holdings, Inc. v. Credit Lyonnais S.A.*, 64 F. App'x 6, 7 n.1 (9th Cir. 2003) (declining to exercise pendent appellate jurisdiction, in part, over a "quite fact-dependent" standing issue in an interlocutory appeal stemming from a district court's denial of state immunity protection) (unpublished).  Where Defendants' standing argument asks us to grapple with such questions, the Eleventh Amendment immunity claim does not.  *See Moniz v. City of Fort Lauderdale*, 145 F.3d 1278, 1281 n.3 (11th Cir. 1998) (declining to exercise pendent appellate jurisdiction over a newly raised standing claim on appeal because the Court could "resolve the qualified immunity [immediately appealable] issue . . . without reaching the merits of

18

appellants' challenge to . . . standing."). Thus, the standing argument does not rest on the "*same specific question*" that "*will necessarily resolve*" or would be necessary to review the Eleventh Amendment immunity issue. *Ealy*, 514 F. App'x at 309 (emphasis added).

For similar reasons, the standing analysis is not "necessary to ensure meaningful review of" Defendants' Eleventh Amendment claim. *Id.* While a standing analysis *could* foreclose the need to address the immunity defense if ISG does indeed lack standing, that is not the pendent jurisdiction test. We therefore hold that we do not have jurisdiction over the pendent standing issue.

3.

We are, also, unpersuaded by Defendants' pendent abstention argument. The abstention doctrine articulated in *Younger v. Harris*, 401 U.S. 37 (1971), compels federal courts to refrain from exercising jurisdiction over state proceedings if there is (1) "an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding," (2) that "implicates important, substantial, or vital state interests," and (3) "provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 165 (4th Cir. 2008). Specifically, Defendants insist that the district court must abstain from hearing this case because it stems from the same set of circumstances and seeks some of the same relief; and the state-court decision, which is being actively litigated, would ultimately decide the validity of the citations issued.

We fail to see how the pendent abstention issue is "inextricably intertwined" with the immediately appealable issue here. Defendants' abstention claim asks us to consider

whether the district court should refrain from hearing the case, given the ongoing nature of the state proceedings and both cases' foundation in the same set of facts. But answering this question will have no bearing on how we resolve Defendants' Eleventh Amendment claim. In other words, this is not the *same specific question* as the underlying, appealable immunity question discussed above. Nor is it necessary to review the doctrine of abstention to resolve the immunity defense properly before this Court. Hence, we will not decide this adjoining pendent issue.[6]

****

Defendants' standing and abstention arguments may be meritorious, but they are not sufficiently related to the Eleventh Amendment claim before us. Accordingly, we are without jurisdiction to review them.

IV.

For the preceding reasons, we decline to exercise pendent appellate jurisdiction over Defendants' standing and abstention arguments. We also agree with the district court and conclude that Defendants are not protected by Eleventh Amendment immunity because ISG's suit fits squarely within the *Ex Parte Young* exception. Thus, ISG may proceed with the merits of its claims below. We, therefore,

*AFFIRM*.

---

[6] ISG also argues that Defendants' standing and abstention arguments are not properly before this Court as they were not raised below. However, because we have determined that we cannot hear these claims based on our lack of pendent appellate jurisdiction over them, we need not address this argument.

20